## 73062. CAROD BUILDING SERVICES et al. v. WILLIAMS.
(355 SE2d 723)

BEASLEY, Judge.

The superior court affirmed a Board of Workers' Compensation order, affirming the administrative law judge's continuation of temporary total disability payments to claimant, on the ground that he had not failed to cooperate with rehabilitation efforts. We granted discretionary appeal.

Williams, a carpenter, was injured in 1978 while working for Carod on a construction job. A ladder collapsed and he fell, injuring his back, as a result of which a lumbar disc operation was performed in 1980. At that time, his doctor gave him a 5% permanent partial disability. In 1982, payments were stopped by the employer/insurer on the ground of a change in condition, i.e., claimant could return to work. After hearing, the ALJ directed continued payments stating that "it seems to me he is not [totally disabled] and can do light work, and when light work is found for him I direct the claimant to either do the work or we will have a hearing and his compensation will terminate."

Thereafter, a second doctor increased claimant's disability rating to "12% to the whole man." A rehabilitation plan was approved by award of June 1984, at which time Williams was 64, in which claimant was "directed to cooperate with the designated . . . rehabilitation supplier" and advised that his failure to do so might result in suspension of the benefits. The plan noted that Williams was unable to return to his former occupation and had physical restrictions in that he could do no lifting in excess of 10 pounds and no repetitive lifting.

In December 1984, the employer obtained an interlocutory order from the board allowing a cessation of benefits due to the employee's "alleged failure to cooperate with rehabilitation efforts in compliance with OCGA § 34-9-200 (e)," and referring the matter to the same ALJ for hearing. The ALJ stated at the outset that the hearing was for determining whether or not there had been a failure of cooperation in rehabilitation. Counsel for appellants agreed this was the purpose.

The ALJ made findings of fact concerning claimant's following of job leads provided by the rehabilitation specialist pursuant to the plan and concluded: "I don't think the hearing displayed such a lack of cooperation with vocational rehabilitation as to justify stopping payments." He then continued: "I will leave it up to the employer/insurer as to whether to reinstate vocational rehabilitation but I think it is going to take more than just furnishing names to the claimant of possible jobs. I think an employer has got to be found that will hire a handicapped man and the claimant needs to be assisted into getting into the job. If the old employer is still located in Georgia, it looks like he could provide such a job."

Employer/insurer appealed to the Board on the ground that the ALJ made errors in findings of fact and employed the wrong legal theory with regard to rehabilitation. There was no mention in the appeal to the Board that the ALJ failed to consider "change of condition" and this enumeration of error will not be considered, not having been properly raised below. *City of Buford v. Thomas*, 179 Ga. App. 769, 772 (2) (347 SE2d 713) (1986).

The question is whether an incorrect legal standard was applied to the consideration of claimant's alleged failure to cooperate in obtaining employment.

OCGA § 34-9-200 (a) as then in effect provided: "The employer shall furnish the employee . . . vocational rehabilitation . . . which in the judgment of the State Board of Workers' Compensation shall be reasonably required and appear likely to . . . restore the employee to suitable employment; . . ." Subsection (e) provided: "The refusal of the employee without reasonable cause to accept . . . vocational rehabilitation . . . when ordered by the board, shall entitle the board in its discretion to suspend, reduce, or limit the compensation otherwise payable . . . unless in the opinion of the board the circumstances justify the refusal, . . ."[1]

OCGA § 34-9-240 provides: "If an injured employee refuses employment procured for him and suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the board such refusal was justified."

The evidence produced at the ALJ hearing, viewed in a light most favorable to the claimant, the prevailing party before the board, and with every presumption in favor of the board's decision indulged, *Poulnot v. Dundee Mills Corp.*, 173 Ga. App. 799, 800 (328 SE2d 228) (1985), revealed that Williams had participated in the preparation of the plan and acquiesced in it. The rehabilitation specialist provided him with a number of leads to specific jobs, and Williams was then responsible for following up on these possibilities. Appellants' argument is that the evidence compels finding that the claimant's actions were not in good faith, thus unjustifiably preventing the offer of a job or unjustifiably avoiding a job. It is true that lack of cooperation so as to foreclose a firm offer could constitute unjustifiable refusal of suitable employment. It depends on the circumstances.

Williams did not obtain a job as a result of these leads. There is evidence that he did apply for several of them and was not hired, either because no offer was forthcoming or the job was filled by some-

---

[1] This section was rewritten and split into two sections, OCGA §§ 34-9-200 and 34-9-200.1, in 1985, effective July 1, 1985. Ga. L. 1985, p. 727.

one else. Much was made by employer/insurer of the Bulloch Hospital orderly-type position in which the person would push a cart and make hospital deliveries of small packages not weighing above Williams' lifting capacity. Although employer/insurer contended that Williams never actually applied for the job but merely went by the hospital, pushed a cart he saw (which the ALJ stated may or may not have been the cart involved with the job) and then left, there is a verification that he did apply for the job and there is no evidence that he was offered or refused an interview or opportunity for the position. He was also given a lead to a cabinetmaker's job, for which he did go and interview. Apparently he discussed with the owner and related at the hearing that, due to his medication of Darvocet, a drug bearing a label indicating a need for caution while driving and operating machinery, he did not believe he should take that job. Whether as a result of this or not, no job offer was forthcoming from this lead. There was also a security guard job at Georgia Southern. Although Williams expressed at the hearing and apparently to his rehabilitation specialist that he did not wish to carry a gun, there is no evidence that he related this to the potential employer or that there was even an interview, but there was an application filed by him for the job. No offer was made. Also, Williams was referred to the State Employment Agency; he interviewed but received no referrals. There was a job at West Lumber Company for which he applied, but he refused to take the prerequisite lie detector test.

As quoted above, the ALJ's judgment was in effect that this was justified. The employer/insurer says not.

Employer/insurer contends that the ALJ erred by implying that what was required to show lack of cooperation was an actual job offer and the subsequent refusal by claimant of suitable employment. As we discern from a reading of the order, however, which to avoid problems of interpretation should more clearly set out the conclusions of law and the law relied upon, the language complained of by appellants, set out above, appears after the ALJ had removed from the employer/insurer the obligation to provide further rehabilitation efforts for Williams and appears to be advisory with regard to their efforts to find a job for Williams. This added portion does not mean it was the standard used by the ALJ to decide if there had been cooperation with regard to the plan, which is another question. OCGA § 34-9-200 (e) provided that even upon a finding of refusal to accept vocational rehabilitation (here, cooperate) without reasonable cause, the board is merely authorized to alter the compensation "in its discretion" unless in its "opinion" the "circumstances justify the refusal." These broad avenues of discretion are limited only by the standard in OCGA § 34-9-240, which requires cessation of compensation when a suitable job is procured and employee unjustifiably refuses it. *Liberty*

*Mut. Ins. Co. v. Neal*, 140 Ga. App. 585 (231 SE2d 574) (1976). That is not the case here.

In *Clark v. Ga. Kraft Co.*, 178 Ga. App. 884 (345 SE2d 61) (1986), the employer had offered a job which the ALJ found suitable for the employee's diminished physical capabilities. The ALJ also concluded that his refusal of it was justified on the sole ground that the job offered no reasonable opportunity for advancement and did not correlate with his interests. This was upheld: "Under this statute [OCGA § 34-9-240] the board is empowered to determine whether a refusal of employment is justified. [Cits.] Such a determination is a discretionary one. [Cits.] In fact, the board is vested with a broad discretion in determining whether proffered employment is refused justifiably. [Cit.] In this regard, we note that the State Board of Workers' Compensation is an administrative agency, [cit.] and that the courts must give due deference to the wisdom of the board in deciding discretionary issues within its area of expertise. [Cit.]" *Clark*, supra at 885.

It appears that the ALJ and the board used the appropriate standard in evaluating Williams' cooperation with the rehabilitation plan.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED MARCH 13, 1987 —
REHEARING DENIED MARCH 30, 1987 — 

*Michael K. Jablonski, Anthony P. Griffin, Judy Farrington Aust,* for appellants.

James T. Williams, *pro se.*