73746. ATKINSON v. LEDBETTER.
(360 SE2d 66)

SOGNIER, Judge.

The Georgia Department of Human Resources (DHR) found that Martha J. Atkinson had failed to cooperate in establishing paternity for her daughter, Amy, and consequently removed her from the Aid to Families with Dependent Children grant she and her family had been receiving. Atkinson appealed DHR's final decision to the Superior Court of Fulton County, which affirmed the administrative decision, and we granted Atkinson's application for discretionary review.

The record reveals that appellant named Robert Meriwether as the father of her daughter, thus allowing DHR to bring a civil paternity suit against him. In the course of the paternity proceeding, HLA blood tests were performed with the consent of all the parties, who stipulated that if the results of that testing excluded the possibility of Meriwether being Amy's father, the paternity action would be dismissed. The parties also stipulated that if the test results were disputed, the disputing party could within 15 days request an order for additional testing at the expense of the requesting party.

When the HLA test results excluded Meriwether as the father of Amy, the paternity action against him was dismissed with prejudice, and DHR sought additional information from appellant regarding Amy's paternity. Appellant insisted she had no further information to give, and thus could not name any other person as Amy's father. Appellant was thereupon sanctioned by DHR pursuant to 45 CFR § 232.12 (d) for her failure to cooperate, and appellant appealed this decision. After an evidentiary hearing during which witnesses appeared and testimony was taken, Administrative Hearing Officer J. C. Harrison found that because the HLA test results had excluded Meriwether, "as long as appellant alleges that Robert Meriwether is the father of Amy Atkinson, she is failing to cooperate with the County Department without good cause for AFDC eligibility purposes."

The record further shows that when appellant sought review of Harrison's decision, DHR's Hearing Officer for Final Appeals, William J. Stanley, affirmed Harrison's decision, adding four "factors" he believed supported this decision. Stanley's decision thus became the

final decision of DHR, and the Superior Court affirmed that determination. We now reverse.

1. Harrison's decision was based on only two findings of fact: that appellant named Meriwether as Amy's father, and that the Superior Court had "held" that he was not the father in the paternity action. Pretermitting the question of whether the Superior Court actually so held in the paternity action, those findings alone do not support Harrison's conclusion that appellant failed to cooperate. "Cooperation," in this regard, is defined at 45 CFR § 232.12 (b), and that definition does not require an applicant for AFDC to establish paternity conclusively, but to assist the agency with whatever information the applicant has or can reasonably obtain, and to provide information (or attest to the lack of it) under penalty of perjury. Harrison, in his decision, applied a far more stringent standard, which would provide, in effect, that if the blood test results exclude a named father, the applicant's refusal or inability to keep naming possible fathers until paternity is established is, per se, a failure to cooperate. In light of the Supreme Court's recognition that HLA tests are not infallible and are not, by themselves, conclusive on the issue of paternity, *Jackson v. Jackson*, 253 Ga. 576 (322 SE2d 725) (1984), Harrison's use of that standard was clearly erroneous. See *Amos v. Dept. of Health &c. Svcs.*, 444 S2d 43 (Fla. 1983).

2. DHR's final decision is equally flawed. In his decision, Stanley listed four factors in addition to the "facts" relied on by Harrison, which support the determination of failure to cooperate. Close examination of these four factors, however, discloses that they are not evidence but the sheerest speculation of Stanley as to the motives of both appellant and Meriwether which he then labeled evidence.

(a) Although Stanley stated he recognized appellant's poverty as a reason for her failure to dispute the HLA test results and pay for a second test, he nevertheless believed she should have done so. The record shows that in order to protest the results of the blood test, appellant would have been required to pay $272 for a second test. The uncontroverted and eminently believable evidence is that her poverty was the only reason appellant did not protest. Ignoring that harsh economic reality while "recognizing" it is pure sophistry.

(b) Stanley portrayed Meriwether's "honesty" in admitting paternity as to another of appellant's children as strengthening his denial of paternity as to Amy, because his admission "indicates that Meriwether is not reluctant to own up to his responsibilities when they are indeed his and not someone else's." If mind-reading were possible and the results of such activity admissible as evidence, we might just as likely find that Meriwether, having been taught the consequences of an admission of paternity by having been ordered to pay support for the first child, now seeks to avoid a repetition of those

consequences as to Amy.

(c) We find absolutely no support in the record for the "possibility of Amy being the result of a 'casual relationship with yet another man.' " The record is remarkably clear in this regard, and shows only appellant's steadfast and uncontroverted insistence that she did not sleep with any other man during the applicable time period.

(d) Similarly, the speculation that jealousy and anger over Meriwether's abrupt departure may have motivated appellant to name him as Amy's father is totally devoid of support in the record. No evidence of jealousy or anger was introduced. In fact, it appears from the record that appellant refused Meriwether's offer of marriage because he beat her.

Thus, the findings used by Stanley to bolster support for the original decision consist of conjecture, speculation, and impermissible inferences. These cannot be relied on in determining whether appellant failed to cooperate. Moreover, Stanley's decision was reached after review of the "cold" record; Harrison, in his decision arrived at after hearing and seeing the witnesses "live," did not make the findings later inserted by Stanley. While OCGA § 50-13-17 (a) *permits* the administrative appeal officer to take evidence, since that is a power the agency had in making the initial decision, the record here shows that he did not do so. Since credibility of witnesses is a question that must be decided by the factfinder who sees and hears the witnesses and is in a position to evaluate their demeanor, Stanley's substitution of his judgment for that of Harrison is impermissible. See generally *Crawley v. MARTA*, 147 Ga. App. 293-294 (1) (248 SE2d 555) (1978).

We recognize that we are bound to affirm the decision of the trier of fact if there is any evidence to sustain it. See *City of Atlanta v. Shaw*, 179 Ga. App. 148, 149 (345 SE2d 642) (1986). However, when there is no evidence to support that decision, our duty is to reverse. Id. Here, since neither the blood test results nor their conflict with appellant's testimony are themselves conclusive, see *Jackson*, supra, they cannot alone support a finding of failure to cooperate, and there is no evidence in the record to support DHR's final decision. *Amos*, supra.

3. In view of our decision in Divisions 1 and 2, we need not address appellant's other enumerations of error.

*Judgment reversed. Birdsong, C. J., McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Deen, P. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

Based on the any evidence rule, the superior court affirmed the Department of Human Resources' decision to suspend Atkinson's in-

dividual portion of the Aid to Families of Dependent Children payments which she and her children were receiving. The DHR found that claimant failed to cooperate in establishing paternity for her out-of-wedlock child, Amy, frustrating its efforts to obtain financial aid for that child from the child's father. See 42 USCA § 602 (a) (26) (B); 45 CFR § 232.12 (a) & (b).

Cooperate, as mandated by 45 CFR 232.12 and defined by this regulation, embraces the obligation of affirmative participation by the claimant in the fact-finding process and the giving of honest answers to relevant questions. Refusing to answer, or giving information which may reasonably be found not credible, are among the responses of the claimant which would constitute refusal to cooperate.

While the initial hearing officer's two expressly stated findings of fact were deficient as such, he specifically stated that he "carefully considered the entire available evidence" and reached his decision "based on the preponderance of the credible evidence." He had observed and listened to Atkinson as a witness.

In the final administrative hearing, upon appeal from the live hearing, the officer considered and gave "a careful review" to the entire record; this included "the recorded testimony" and the fact that it was presented live before the initial hearing officer. It is that final agency decision which the superior court affirmed and we review. The administrative appeal officer had "all the powers it would have in making the initial decision," OCGA § 50-13-17 (a), and thus was authorized to finally determine credibility of the witnesses and weight of the evidence.[1]

The officer found that the negative report on the HLA test was admissible under OCGA § 50-13-15 (1). Besides the test results and the dismissal, the hearing officer expressly listed four other factors contributing to the finding that claimant failed to cooperate.

1) The stipulation of claimant for the HLA test was that it would be taken and govern. The parties to the paternity proceeding had agreed to be bound by the result of the HLA blood test unless the result was challenged within fifteen days and another test was accomplished at the requesting party's expense. Claimant did not invoke the opportunity to protest. The hearing officer took into account that claimant cited poverty as an excuse for failing to protest (since an additional test would cost $275) but was of the opinion she at least could have protested and requested additional time for financial help.

2) Robert denied paternity of Amy. Yet he admitted paternity as to another child of claimant. The admission gave strength to his de-

---

[1] The case cited by the majority, *Crawley v. MARTA*, 147 Ga. App. 293 (1) (248 SE2d 555) (1978), does not involve administrative proceedings but rather a jury trial. The administrative appeal officer's role differs significantly from that of a receiving judge.

nial, in the hearing officer's judgment. Moreover, shortly after Amy's birth, claimant initiated action against Robert but dismissed it. Although claimant asserted she wished to avoid the humiliation and harassment of court proceedings, the hearing officer found her other actions did not indicate a reluctance to invoke the aid of courts or other tribunals.

3) Claimant had a third illegitimate child by another person and admitted a number of close male friends. This would not rule out the possibility of Amy being the result of a "casual relationship with yet another man."

4) Claimant testified that she and Robert lived together for several years and that their relationship terminated abruptly when he moved in with a neighbor. The hearing officer reasoned that jealousy and anger could be the cause of her accusing Robert.

Based upon all the circumstances, and giving great weight to the blood test results, the administrative officer found claimant "refused to name the correct father of her child Amy, whose identity she must certainly know." Thus, the officer, like the initial hearing officer who saw and listened to Atkinson, did not believe the claimant and found that the lack of credibility constituted failure to cooperate.

OCGA § 50-13-19 sets the bounds for court review of administrative determinations. The prime caveat regarding review of a final administrative decision is in subsection (h): "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Somewhat analogous are the findings of the full board, which supersede those of the ALJ in workers' compensation cases and must be upheld if there is "any evidence" to support them. *Royal Globe Ins. Co. v. Hartford Ins. Co.*, 175 Ga. App. 95, 96 (1) (332 SE2d 387) (1985).

1. It was not error to admit the HLA test result. Such evidentiary matter falls squarely within the language of OCGA § 50-13-15 (1) permitting the reception of a "medical . . . evaluation of a type routinely submitted to and relied upon by the agency in the normal course of its business."

This proof was not submitted to conclusively establish that claimant had failed to cooperate, which it did not, but was properly considered as evidence that claimant was not naming the correct father.

2. Beside the result reached by the factfinder that claimant had failed to name the father, there were additional factors which led to the conclusion that claimant's answers in this crucial area were not credible, and that in this regard she did not cooperate. Considering the record in its entirety, I cannot conclude that the findings of the agency were clearly erroneous. OCGA § 50-13-19 (h) (5). This removes the basis for reversal.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED JULY 16, 1987.

*Patricia D. Barron*, for appellant.
*Michael J. Bowers, Attorney General, Mary Foil Russell, Assistant Attorney General*, for appellee.