A94A2259. DEPARTMENT OF CORRECTIONS v. SHAW.
A94A2260. DEPARTMENT OF CORRECTIONS v. CHAMBERS.
(456 SE2d 628)

RUFFIN, Judge.

Wayne Shaw and Bruce Chambers were terminated from their employment with the Georgia Department of Corrections ("department") based on their alleged involvement in the use of excessive force against an inmate in the Scott Correctional Institution. The dismissals were appealed to the State Personnel Board ("board") where, after a hearing, the dismissals were upheld by a hearing officer and the board. On appeal in the superior court, the dismissals were reversed. The court ordered the officers' reinstatement and payment of back pay. The court also held that the board abused its discretion in dismissing Shaw and Chambers and thus failing to apply and follow its progressive discipline policy. We granted the department's application for discretionary appeal to determine whether the superior court applied the proper standard of appellate review and whether the court substituted its own judgment for that of the board with respect to the weight of the evidence and the credibility of the witnesses.

"[V]iewed in a light most favorable to the [department], the prevailing party before the board, and with every presumption in favor of the board's decision indulged, [cit.]" Carod Bldg. Svcs. v. Williams, 182 Ga. App. 340, 341 (355 SE2d 723) (1987), the evidence reveals that Shaw was a lieutenant and shift supervisor and Chambers was an officer on duty, assisting other officers in moving inmates inside the facility, at the time of the incident in question. Shaw and Chambers were in a security office inside the facility when they heard an altercation outside the office door. An inmate had resisted Officer Carl Tyler's order to place his hands on the wall for a pat-down search and had struck Tyler with his elbow. Shaw and Chambers rushed out of the office, and Chambers went to Tyler to assist him in subduing the inmate. Officer Kenneth Statham testified that he was also in the security office, heard the scuffle outside and rushed to see the commotion. When Statham arrived, the inmate was in a physical confrontation with the officers, but his head was pressed down and held to the floor by Tyler's knee, placed at the inmate's temple. Statham testified that he retrieved a pair of handcuffs from the floor, walked over to the officers and asked them to "knock it off." After Officer Sammy Tindal managed to handcuff the inmate, Statham testified that Chambers and Tyler picked the inmate up and threw him against the wall with such force that his back and head bounced against the wall. Statham testified that the inmate appeared disoriented and was barely standing, weaving back and forth. Statham turned to Shaw, who witnessed the incident from the security office door, and sug-

gested that the inmate be allowed to sit on the floor before he passed out. Shaw then assisted the inmate to the floor.

Shaw and Chambers provided written statements regarding the incident; however, neither statement made reference to the placement of Tyler's knee at the inmate's head, to the shoving of the inmate into the wall, to the inmate's placement on the floor because of his disoriented state, or to Statham's presence during the incident. Shaw was charged with failing to take action to stop the physical abuse of an inmate upon witnessing three subordinate officers using excessive force and making a false official statement in conjunction with the use of excessive force on an inmate. Chambers was charged with the use of excessive and unnecessary force of an abusive nature against an inmate and making a false official statement in conjunction with the use of excessive force.

1. "Under OCGA § 45-20-9 (m) (4) the superior court may reverse the decision of the board where the board's decision is 'clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.' OCGA § 45-20-9 (m) states in part: 'The court shall not substitute its judgment for that of the board as to the weight of the evidence on questions of fact.' This statutory language has consistently been construed as confining the scope of review by the superior court to the 'any evidence' standard. *Hall v. Ault*, 240 Ga. 585 (242 SE2d 101). [Cit.]" *Dept. of Human Resources v. Horne*, 198 Ga. App. 341, 342 (401 SE2d 556) (1991).

In its reversal of the board, the superior court acknowledged the "any evidence" standard but failed to apply it. Instead, the court held that the department failed to carry its burden of proving misconduct and rule violations by Shaw and Chambers to support their terminations by a preponderance of the evidence. Furthermore, based on its review of the record in its entirety, the court held that the evidence supported a finding to the contrary, that Shaw and Chambers in fact complied with departmental rules and regulations. In doing so, the court cited inconsistencies in Statham's testimony and discussed its preference for the testimony of the other officers present during the incident over Statham's testimony, despite an express determination by the board, supported by specific citations to the record, that Statham was the most credible witness.

Viewed in a light favorable to the department, the evidence supported the board's decision. *Carod*, supra; *Cobb Gen. Hosp. v. Burrell*, 174 Ga. App. 631 (331 SE2d 23) (1985). " 'Neither the superior court nor this court is authorized to reverse an award because in its opinion the prevailing party did not carry the burden of proving a fact necessary to sustain its position if such fact is nevertheless supported by some competent evidence.' [Cit.]" Id. at 632. " ' "The board is the sole judge of the evidence, of the credibility of the witnesses, and as to

what evidence it will credit as the basis for an award. (Cits.)" (Cit.)' [Cit.]" Id. at 631-632. While the hearing officer and the board may choose to believe or disbelieve certain testimony, " '[t]he superior court, when sitting as an appellate body, . . . is not authorized to substitute its judgment as to the weight and credibility of the witnesses. (Cit.)' " *Gasses v. Professional Plumbing Co.*, 204 Ga. App. 69, 70-71 (418 SE2d 424) (1992).

" 'The superior court erred in setting aside [the board's terminations of Shaw and Chambers] supported by some evidence. (Cit.)' [Cit.] The superior court should have affirmed [the decisions]. [Cits.]" *Cobb General*, supra at 632; *Horne*, supra.

2. The department contends the superior court also erred in requiring that the board apply progressive discipline and impose a less severe penalty. The court reversed the dismissals of Shaw and Chambers and held that the circumstances surrounding the subject incident did not warrant imposition of the most severe penalty of dismissal. The court further held that the board abused its discretion and was arbitrary and capricious in failing to apply and follow its progressive discipline policy. See Rule 478-1.15 of the Rules of the State Personnel Board.

"OCGA § 45-20-9 (h) provides for judicial review of a decision of the State Personnel Board. OCGA § 45-20-9 (m) contains the standard of review to be applied, and lists the limited grounds for reversal, the last of which is at issue here: '(T)he court shall not substitute its judgment for that of the board as to the weight of the evidence on questions of fact. The court may . . . reverse the decision or order of the board if substantial rights of the petitioner have been prejudiced because the board's . . . orders are: . . . (5) Arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' " *Dept. of Transp. v. Nobles*, 187 Ga. App. 244, 245 (370 SE2d 11) (1988). The foregoing provisions give the superior court the authority to reverse the board's decision on the ground that the board abused its discretion by departing from its progressive discipline policy. See *Ga. Dept. of Labor v. Sims*, 164 Ga. App. 856 (2) (298 SE2d 562) (1982).

The trial court based its reversal, in part, on the circumstances surrounding the subject incident but also compared the punishment imposed by the same warden on another corrections officer charged with using excessive force within weeks of the incident in the instant case. That officer was not discharged but was given a six-month reduction in pay. However, explaining the basis for his decision to dismiss Shaw and Chambers, the warden testified that the conduct in the instant case demanded more severe punishment because a supervisor was involved; Officer Tyler instigated the incident; excessive force was used while the inmate was handcuffed; a complete report of

the incident was not given; there were conflicting statements; and the inmate sustained injuries. The warden also testified that the dismissals were necessary to demonstrate that abuse of prisoners would not go unpunished.

The foregoing demonstrates the dismissals were not imposed arbitrarily and capriciously. Accordingly, the trial court erred in reversing the dismissals as there was no abuse of discretion in the board's failure to impose less severe punishment.

*Judgment reversed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 14, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995 — ▮▮▮▮▮▮▮▮▮▮

*Michael J. Bowers, Attorney General, Daryl A. Robinson, Senior Assistant Attorney General, Terry L. Long, Assistant Attorney General,* for appellant.

*Walbert & Mathis, Charles A. Mathis, Jr., Patrick R. Matarrese,* for appellees.