A97A1043. RUSS v. AMERICAN TELEPHONE & TELEGRAPH.
(493 SE2d 46)

SMITH, Judge.

In this appeal, claimant Nancy Russ contends that the superior court applied an improper standard of review when it reversed the substituted findings of the appellate division of the State Board of Workers' Compensation. We agree and reverse.

The ALJ found that Russ suffered a compensable injury to her back in April 1991 while working as a senior technical assistant with AT&T. She returned to work on a half-day basis in April 1993 and on a full-time basis in August 1993. On March 31, 1994, Russ was laid off. She subsequently sought total disability benefits due to a change in condition. AT&T opposed the claim. The ALJ denied Russ's claim, finding that Russ did not meet her burden of proving that she made a diligent search for suitable employment and therefore failed to prove

that she had undergone a change in condition for the worse under the standard of *Maloney v. Gordon County Farms*, 265 Ga. 825, 827 (462 SE2d 606) (1995). The appellate division, however, substituted an award of temporary total disability benefits, finding that Russ proved "by a preponderance of the evidence that she has made a diligent unsuccessful job search following her layoff from AT&T, that she continues to suffer physical limitations attributable to her compensable injury, and that she suffers a loss of earning power as a result of that injury." The superior court then reversed the appellate division, concluding that the ALJ's findings on the issue of Russ's failure to make diligent efforts to find employment were supported by a preponderance of the competent and credible evidence. This appeal by Russ ensued.

OCGA § 34-9-103 (a) sets out the standard to be employed by the appellate division when reviewing findings of fact made by an ALJ: those findings "shall be accepted by the appellate division where such findings are supported by a preponderance of competent and credible evidence contained within the records." Id. The role of the appellate division, as directed by OCGA § 34-9-103, was recently clarified in *Bankhead Enterprises v. Beavers*, 267 Ga. 506 (480 SE2d 840) (1997). The Supreme Court held that OCGA § 34-9-103 (a) permits the appellate division to vacate an ALJ's findings of fact and conclusions of law when they are unsupported by a preponderance of the competent and credible evidence and to substitute alternative findings. According to *Beavers*, "[t]he appellate division must weigh the evidence and assess the credibility of witnesses and if it determines that the award of the ALJ is supported by a preponderance of admissible evidence, it will be accepted. But, if after assessing the evidence of record, the appellate division concludes that the award does not meet the statutes' evidentiary standards, the appellate division may substitute its own alternative findings for those of the ALJ, and enter an award accordingly. [Cits.]" Id. at 507.

Once the appellate division has made an award, the scope of a superior court's review of the appellate division's findings is limited. It is bound by the "any evidence" standard of review and is not authorized to substitute its findings for those made by the appellate division or to substitute its judgment concerning the weight of evidence or credibility of witnesses. *Owens-Brockway Packaging v. Hathorn*, 227 Ga. App. 110, 111 (488 SE2d 495) (1997). Under this standard, the trial court's role is not to "return to the original findings of the ALJ and evaluate whether that decision was supported by a preponderance of the evidence, but to review the appellate division's order and make a determination as to whether it is supported by any evidence." Id. Even if the appellate division's reweighing of the evidence resulted in a conclusion differing from that of the ALJ, the superior

court must affirm the appellate division if there is *any* evidence to support its conclusion. Id.

Here, the appellate division found that Russ was capable of performing only sedentary work because of her injury and that she applied for and interviewed for several jobs within her physical restrictions. The appellate division further found that while Russ was not qualified for positions with AT&T for which she applied, Russ did apply and interview for jobs with other employers, and she sent resumes to employers whose names were provided by a rehabilitation counselor. The appellate division apparently relied on this evidence to find that Russ had met her burden of proving by a preponderance of the evidence that she had made a diligent job search. Although the evidence was in conflict as to the issue of Russ's job search, and the appellate division would have been authorized to affirm the findings of the ALJ, some evidence of record *was* presented supporting the substituted findings made by the appellate division. Consequently, we are bound under the "any evidence" standard to uphold the award of the appellate division and to reverse the decision of the trial court reinstating that of the ALJ. See *Hathorn*, supra; *Bankhead Enterprises*, supra; accord *Bennett-Murray, Inc. v. Barnes*, 222 Ga. App. 137, 138-139 (1) (473 SE2d 166) (1996).

*Judgment reversed. Beasley, J., concurs specially. Birdsong, P. J., concurs in the judgment only. McMurray, P. J., disqualified.*

BEASLEY, Judge, concurring specially.

This case is a good illustration of two jurisprudential matters with respect to the processing of the claim of an employee for workers' compensation benefits.

1. One is the relationship between the scope in factual determination authority of the appellate division of the Workers' Compensation Board and the more limited scope of that authority in the superior court sitting as an appellate court. Like the administrative law judge, the appellate division of the board engages in a weighing of the evidence. Its function, when an appeal challenges the findings of fact made by the administrative law judge, is to review the evidence of record anew but through the lens of the question (not strictly de novo): "Are the administrative law judge's findings of fact supported by a preponderance of competent and credible evidence?" OCGA § 34-9-103 (a). If the appellate division assigns more weight to some evidence than the ALJ did, or rejects certain evidence as not competent ("admissible" per OCGA § 24-1-1 (1)), or believes or disbelieves witnesses differently, then the preponderance may be on the appealing party's side because the appellate division decides the evidence on the loser's side is actually of superior weight. OCGA § 24-1-1 (5). Discretion is inherent in this subjective decision-making process.

Just like juries, all judges would not weigh, or believe, or adjudge evidence competency alike, within the confines of the law's outer limits. A substitute award results, taking the victory from the party who the ALJ decided had the greater weight of competent and credible evidence. See *Bankhead Enterprises v. Beavers*, 267 Ga. 506 (480 SE2d 840) (1997), and cases cited therein.

When the case, which thus far has been acted on only by the executive branch of government exercising a quasi-judicial function, reaches the judicial branch, it comes with very narrow rule of law parameters. OCGA § 34-9-105 (c) lists the only possible bases for reversal. The superior court has a much more limited authority than does the board, as the second tier reviewer. With respect to the facts, the findings of the board are conclusive unless, in the judgment of the superior court, "[t]here is not sufficient competent evidence" to warrant the decision. OCGA § 34-9-105 (c) (4). The word "sufficient" does not authorize the superior court to balance the evidence for and against the two adverse positions, for it cannot weigh the evidence. *Bennett-Murray, Inc. v. Barnes*, 222 Ga. App. 137, 139 (1) (473 SE2d 166) (1996). It only looks at the body of evidence supporting the decision of the board to see if it is admissible first and sufficient in substance second to support the award. Thus there is a significant distinction between roles of the board and the superior court with respect to what the facts in the case are.

2. The second matter which this case and the opinion in it demonstrate is the agonizingly long and costly process which an employee's workers' compensation claim must follow if it is fought to the end by the employee or the employer and insurer. This case involves the establishment of the facts, but it could just as well have involved another legal issue and the process would be the same. There are more steps and more tiers in these very frequently occurring cases than in the vast amount of matters which require adjudication. The case is presented live on one level, and then there are four possible vertical review levels. All told, fifteen officers having judicial power can be involved if a petition for certiorari is filed in the Supreme Court, even if the case is addressed only by a panel of three judges in this Court. That is more than is accorded a death penalty criminal case, which involves at most eight judicial officers in the state system.

The initial factfinder, and the only one who personally observes the giving of testimony by the witnesses with all its nuances which contribute to the issue of credibility, is the ALJ. These executive officers are specialists in workers' compensation law and the process of adjudication for such cases. After hearing and receiving all the evidence, the ALJ is bound to issue a decision within the short period of 30 days, and the compensation award must contain written "findings

of fact and conclusions of law and any other necessary explanation of the action taken." OCGA § 34-9-102 (f). If one of the parties perceives an error, or the ALJ recognizes error himself or herself, then the ALJ "may reconsider the official decision prior to its becoming final to correct apparent errors or omissions." OCGA § 34-9-102 (f). So there is an opportunity for review at the very first level.

The non-prevailing party may then appeal to the three-member Workers' Compensation Board's appellate division. OCGA § 34-9-103 (a). A limited, not a de novo, review is authorized. The legislated change in the board's function in 1994 moved it closer to a pure review function, for previously it was a second fact-finding body and could even hear witnesses. OCGA § 34-9-103 (a), pre-1994, July 1; *Automatic Sprinkler Corp. &c. v. Rucker*, 87 Ga. App. 375 (73 SE2d 609) (1952); *Dept. of Revenue v. Hughes*, 99 Ga. App. 127, 128 (1) (108 SE2d 184) (1959); *Atlanta Family Restaurants v. Perry*, 209 Ga. App. 581, 582 (434 SE2d 140) (1993).

Nevertheless, once again findings of fact and conclusions of law are required. OCGA § 34-9-103 (a). And, as on the ALJ level, reconsideration of errors and/or omissions brought to the attention of the appellate division by the parties or a member of the division itself is provided for. Even at this stage, the ALJ may reconsider again. OCGA § 34-9-103 (a) and (b). Thus, there are by statute two stages of self-review to further protect the parties from injustice.

Then judicial review is available. OCGA § 34-9-105. As construed by this Court, there is an option of first judicial review taking place in the superior court sitting as an appellate court or first judicial review being in this Court. *Atlanta Family Restaurants*, supra, demonstrates this. The difference is that the appeal is of right to the superior court but only by application for discretionary review by this Court. OCGA § 5-6-35 (a) (1). This Court would grant review only if the appellant shows there is a possibility of legal error in the lower tribunal's decision.

If the appellant or the superior court itself does not assure that the direct appeal is heard and decided within the time provided by statute, then the decision of the board is affirmed by operation of law. OCGA § 34-9-105 (b). That opens the door to a review of the board's decision directly by the Court of Appeals, if it chooses to do so upon application. OCGA § 34-9-105 (d); *Lanier v. Jim Brown Dev. Corp.*, 199 Ga. App. 255 (404 SE2d 626) (1991); *Travelers Ins. Co. v. Adkins*, 200 Ga. App. 278 (1)-(3) (407 SE2d 775) (1991).

OCGA § 5-6-35 (a) (1), which governs discretionary appeals, states that such may be taken "from *decisions* of the superior courts reviewing decisions of the State Board of Workers' Compensation." (Emphasis supplied.) Of course, when the board's award is affirmed by operation of law, there is no decision of the superior court review-

ing it. See *Reynolds Constr. Co. v. Reynolds*, 218 Ga. App. 23, 26 (459 SE2d 612) (1995) (Beasley, C. J., concurring specially). In addition, OCGA § 5-6-35 (d) states that the application shall be filed "within 30 days of the entry of the order, decision, or judgment complained of." What is complained of was entered at the least nearly four months prior to the application for review by this Court. OCGA § 34-9-105 (b). Despite the wording of these subsections, this Court has construed that statute and OCGA § 34-9-105 (d) as authorizing it to review board decisions directly.

If the Court of Appeals agrees to review the matter, as it did in Nancy Russ' case, then the door is open and the appeal follows the same path followed by a direct appeal. OCGA § 5-6-35 (g). This includes opportunity for petition for certiorari in the Supreme Court of Georgia, after this Court either decides the appeal or denies an application for full review. OCGA § 5-6-15. All seven justices decide whether or not to grant the petition, and if it is granted, all review the case. Ga. Const. 1983, Art. VI, Sec. VI, Par. I; OCGA § 15-2-6; Supreme Court Rule 17. *Bankhead Enterprises* is an example of a certiorari case where this Court declined full review and the Supreme Court reversed the superior court judgment (not one by operation of law) because the superior court misunderstood the dimensions of the role of the board in reviewing an ALJ award. It also accepts certiorari in cases where this Court allows a full review and issues a full opinion. See, e.g., *Hallisey v. Ft. Howard Paper Co.*, 268 Ga. 57 (484 SE2d 653) (1997).

Thus, one workers' compensation case may travel a long and slow and expensive and tortuous path before finality. Yet the purpose of the Workers' Compensation Act is to provide ready relief to persons who are injured on the job. As stated in *Southeastern Aluminum Recycling v. Rayburn*, 172 Ga. App. 648, 649 (1) (324 SE2d 194) (1984), "The Workers' Compensation Act was designed to provide immediate financial assistance to injured employees and to furnish a speedy, inexpensive and final settlement of their claims. [Cits.]" See also *Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 2 (28 SE2d 280) (1943); *Travelers Ins. Co. v. Southern Elec.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993). OCGA § 34-9-221 (a) bespeaks the goal: "Income benefits shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability is controverted by the employer." The current belabored process shunts aside the attribute of promptness.

The ALJ's award is final unless an appeal is filed to the board. OCGA § 34-9-102 (f). If an appeal is taken from the decision of the board, "the appeal shall operate as a supersedeas if the employer has complied with the provisions of [law] respecting insurance; and no such employer shall be required to make payment of the award

involved in the questions made in the case so appealed until the questions at issue therein shall have been fully determined in accordance with [the law]." OCGA § 34-9-105 (e). Then if an application for review by this Court is filed, either from the decision of a superior court or from a board decision which has been affirmed by operation of law, "[t]he filing of an application for appeal shall act as a supersedeas to the extent that a notice of appeal acts as supersedeas." OCGA § 5-6-35 (h). OCGA § 5-6-46 sets the supersedeas law in civil actions.

Nancy Russ' injury occurred within the scope of her employment and while on the job in 1991. On May 18, 1994, she filed a notice of claim of change of condition for the worse as of March 31. Now, three and one-half years later, she has prevailed to the point of finality. That is, assuming there is no certiorari. The issue of whether this employee suffered a change has been resolved, entitling her to the workers' compensation benefits which were to serve as steady income since 1994.

There are too many irons in this fire.

DECIDED OCTOBER 21, 1997 — 

*Bach & Hulsey, Robert J. Hulsey, Robert E. Bourne*, for appellant.

*Wilson, Strickland & Benson, Earl B. Benson, Jr., Sara L. Doyle*, for appellee.