A03A2164. GEORGIA DEPARTMENT OF HUMAN RESOURCES
v. ODOM.
(597 SE2d 559)

SMITH, Chief Judge.

This appeal arises out of the trial court's reversal of a ruling entered by the State Personnel Board (the board) with regard to the dismissal of an employee of Southwestern State Hospital (the hospital). Because we conclude that the trial court erroneously substituted its judgment for that of the board, we reverse.

Gail Odom was employed as a health service technician by the hospital, a facility for psychiatric patients. Following an altercation with a patient, the Department of Human Resources (DHR) notified Odom that she would be dismissed. Odom appealed this decision, and a hearing was conducted before an administrative law judge with the Office of State Administrative Hearings. See OCGA § 45-20-9 (a).

Odom testified that she informed a patient being admitted to the hospital that she needed to take the patient's vital signs. The patient was uncooperative and told Odom, "You don't tell me what to do." Odom again explained to the patient that she needed to examine her, and the victim "began to curse and call [Odom] all kinds of names." Odom advised the admitting physician that the patient was refusing the examination, and Odom then left the room. The physician apparently persuaded the patient to allow Odom to conduct the examination, and Odom returned to the room, propping the door open because she did not want to be alone with the patient. Odom testified that as she was turned toward the sink in the examination room and was donning rubber gloves, the patient was "constantly fussing," cursing her, calling her names, and stating, "I'm not going to do nothing you say" and "You don't tell me what to do." According to Odom, the security guard on duty in the area came to the door when he heard the patient's loud talking and asked her to quiet down.

Odom testified that as she turned away from the sink, the patient "jumped" her. Odom stated that the patient "balled up" her fist and grabbed Odom's wrists. She stated that the security guard "got between" her and the patient and successfully forced the women apart. Odom testified that after one hand came free, she pushed the security guard in order to brace the patient "against the wall." According to Odom, she pried the patient's hand off her wrist, but she never attempted to strike the patient. Odom was wearing a bracelet, which was broken during the altercation. Odom also testified that the patient struck her with her fist, although it is not clear from the transcript when this occurred.

The security guard, Freddie Elliott, testified that he was inside the admissions office when he heard "a loud noise that the patient was making, that she wouldn't cooperate as far as going into the examination room." He stated that by the time he entered the examination room, Odom and the patient "had already grabbed ahold of" each other, and "before they decided they wanted to let go and pass licks, [the guard] made the decision to go ahead and get between them." He testified that he got each woman to release one of the other's wrists but that when he did so, Odom clenched her free fist and swung around him "to try to hit the patient. So I blocked it with my elbow." Elliott testified that after he finally broke the women apart, Odom left the area, and the patient was "scared and agitated."

The ALJ concluded that DHR had "proven the most serious of the charges brought against [Odom], that being that she swung her fist at [a] patient." The ALJ further concluded, however, that given the intervention of a security officer, whether Odom would have actually struck the patient "is conjecture." According to the ALJ, although Odom's "aggressive behavior of swinging her fist at a client clearly violated both her training and DHR policy," given Odom's employment for more than 24 years with "no adverse action since 1987," the penalty of dismissal is "too severe." Based on these and other conclusions of law and factual findings included in its written order, the ALJ denied Odom's appeal but modified the penalty from dismissal to a 30-day suspension without pay.

DHR appealed this decision to the board, which concluded that DHR had "proved the charges [against Odom] by a preponderance of the evidence," reversed the decision of the ALJ, and reinstated the sanction of dismissal proposed by DHR. Odom sought review of this decision in the Superior Court of Thomas County. Quoting OCGA § 45-20-9 (m) (5), the trial court found the board's decision to be "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The court then reversed the board's decision, remanded the case to the board, and directed it to reinstate the ALJ's decision. DHR appeals from this ruling, arguing that the trial court applied an incorrect standard of review. We agree.

Under OCGA § 45-20-9 (m) (5), a superior court is authorized to reverse the board's decision if the decision is "[a]rbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The court's review, however, is limited in scope and must be "confined to the record. The court shall not substitute its judgment for that of the board as to the weight of the evidence on questions of fact." OCGA § 45-20-9 (m). This statute "prevents a de novo determination of evidentiary questions" and authorizes "only a determination of whether the facts found by the board are supported by 'any evidence.'" *Hall v. Ault*, 240 Ga. 585, 586 (242 SE2d 101) (1978). The scope of this court's review is similarly narrow. We must construe the evidence "in a light most favorable to the prevailing party . . . and the State Personnel Board's decision must be affirmed if there is any evidence to support it. [Cit.]" *Ga. Mountains Community Svc. Bd. v. Carter*, 237 Ga. App. 84, 86 (514 SE2d 86) (1999). As we stated in *Dept. of Corrections v. Shaw*, 217 Ga. App. 33, 34-35 (456 SE2d 628) (1995):

Neither the superior court nor this court is authorized to reverse an award because in its opinion the prevailing party did not carry the burden of proving a fact necessary to sustain

its position if such fact is nevertheless supported by some competent evidence. The board is the sole judge of the evidence, of the credibility of the witnesses, and as to what evidence it will credit as the basis for an award.

(Citations and punctuation omitted.)

Although controverted, some evidence was presented that Odom closed up her fist and attempted to strike the patient. We also note that evidence was presented showing that Odom had undergone training on a yearly basis concerning management of "acute psychiatric patients." This training primarily addressed the de-escalation of situations involving aggressive patients and emphasized use of self control by the hospital staff. The hospital supervisor who described the training method testified that it teaches "that you've got to gain control of your own emotions and de-escalate the situation and deal with it in the least aggressive manner." This supervisor recommended Odom's dismissal based on "the fact that there was an act of aggression toward [the] patient and our policy clearly says that we will not tolerate that type of behavior." The deputy superintendent of the hospital testified that she too recommended dismissal, on the ground that Odom "was in the act of throwing a punch."

We recognize that this difficult patient had been admitted to the hospital "numerous times," and she was easily agitated and could quickly become aggressive. And without a doubt, the patient was the initial aggressor. Nevertheless, evidence was presented that even though an employee was permitted to "grab" or "block" such a patient in order to protect himself or herself, the employee was never authorized to "punch" a patient. Furthermore, Odom had received training concerning the necessity of exercising self control and concerning approved methods of dealing with aggressive patients.

It appears that Odom forgot or ignored her training; although the patient had been unruly and combative toward Odom, at the time Odom attempted to strike the patient, the patient's ability to harm Odom had been curtailed by the intervening security officer. In addition, although Odom had not been previously disciplined for attempting to strike a patient, the ALJ found that Odom had received written reprimands in 1995 and 1998 for leaving a patient unattended and for making "inappropriate comments" to a patient. The ALJ also found that Odom had been suspended without pay in 1987 for "failing to check a patient's purse when the patient was admitted to the hospital." In addition, Odom admitted her supervisor had told her that she needed "to be a little bit nicer to the clients" of the hospital.

These facts support the board's decision and demonstrate that it was not made arbitrarily and capriciously. This case is distinguished

from *Ga. Dept. of Labor v. Sims*, 164 Ga. App. 856 (298 SE2d 562) (1982), relied on by Odom. In *Sims*, we affirmed the trial court's ruling that dismissal was too severe a penalty for an employee who had engaged in agency-discrediting conduct and insubordination. We affirmed on the basis that the appellant made arguments unsupported by its enumeration of error. Id. at 857. We then stated that even if the argument were included in the enumeration of error, the trial court was authorized to reverse the board's decision on the ground that the board departed from its progressive discipline policy. Id. at 857-858. Here, Odom's conduct was far more severe than that of the employee in *Sims*. Odom swung her fist at a patient, an individual correctly characterized by DHR as a person "whose care and safety [Odom] was required to protect." As pointed out by DHR, the uncontroverted evidence in the record demonstrates both "DHR's 'no tolerance' policy" as well as Odom's past misconduct, which demonstrated her "inattentiveness and indifference to" patients at the hospital. It is regrettable that an employee of 24 years faces dismissal. Nevertheless, the record supports the board's decision, and the trial court erred in reversing it. We realize that Odom's action of attempting to strike the patient may well have been provoked by the patient's violent and offensive conduct. Our duty remains clear, however, and we must reverse the trial court's ruling.

We note the trial court's conclusion that the board "ignored the effect of the *Positive Discipline Program*, as adopted by the Board, and of which the Administrative Law Judge took judicial notice." The record does not support this finding. At the beginning of the hearing, the ALJ acknowledged taking "[o]fficial notice" of the rules of the State Personnel Board, but the ALJ's written order did not mention any specific progressive discipline policy. Rather, the ALJ cited State Personnel Board Rule 478-1-.15.204 and stated, "Misconduct, if proven, may be used as a basis for dismissing an employee." As discussed above, evidence was presented showing that Odom had engaged in conduct for which the hospital had no tolerance, in addition to conduct toward patients in the past for which she had received both written and verbal reprimands. Odom's dismissal from employment was authorized.

Finally, we address Odom's contention that the board failed to adhere to "mandatory statutory language" regarding the form of its decision and thereby "clearly prejudiced" her "substantial rights." Odom cites to OCGA § 50-13-41 (d), which provides in relevant part:

> In reviewing initial decisions by the Office of State Administrative Hearings, the reviewing agency shall give due regard to the administrative law judge's opportunity to observe witnesses. If the reviewing agency rejects or modifies a

proposed finding of fact or a proposed decision, it shall give reasons for doing so in writing in the form of findings of fact and conclusions of law.

Although the board is required to make these findings of fact and conclusions of law under this statute, the parties agree that Rule 478-1-.20 (PAR. 20.402) of the State Personnel Board provides that the board's findings of fact and conclusions of law "may be by adopting the findings, conclusions and decision of the administrative law judge. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."

The board in this case did not make its own findings of fact and conclusions of law. Instead, it concluded that DHR had proved the charges by a preponderance of evidence, adopted "that portion of the findings of fact and conclusions of law [made by the ALJ] which is consistent with the Board's decision," and entered a decision reinstating Odom's dismissal. Odom argues that the board's decision was unlawful because it neither entered its own findings of fact and conclusions of law, nor did it fully adopt those of the ALJ. But the rule on which Odom relies does not state that if the board adopts the findings and conclusions of the ALJ, it must do so in total. Instead, it uses permissive language to describe one method by which the board can enter its findings and conclusions. We agree with DHR that the board "gave adequate reason for its decision to reinstate the sanction of dismissal" and furthermore that the board was not required to recite every fact and conclusion consistent with its decision "when reason dictates" that Odom's misconduct "reasonably warranted dismissal." Odom has not shown how she was harmed by the procedure employed by the board in issuing its decision. The basis for the board's decision is clear. As discussed above, the trial court erroneously substituted its judgment for that of the board, and reversal is required.

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2004.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Bryan K. Webb, Kendall L. Kerew, Assistant Attorneys General,* for appellant.

*Brimberry, Kaplan & Brimberry, Jerry W. Brimberry,* for appellee.