A05A0797. GEORGIA DEPARTMENT OF EDUCATION
v. NIEMEIER.
(616 SE2d 861)

BERNES, Judge.
We granted appellant Georgia Department of Education's ("Department") application for discretionary appeal to determine whether the State Personnel Board ("the Board" or "SPB") was authorized to issue additional findings of fact based on the record evidence and to reverse the administrative law judge's ("ALJ") initial decision upholding the Department's dismissal of Sam Niemeier. We conclude that the Board was so authorized and therefore, we affirm.

" '(V)iewed in a light most favorable to [Niemeier], the prevailing party before the [B]oard, and with every presumption in favor of the [B]oard's decision indulged, (cit.)' [cit.]" *Dept. of Corrections v. Shaw*, 217 Ga. App. 33 (456 SE2d 628) (1995), the evidence shows that Niemeier, a physical education instructor, taught at the Georgia School for the Deaf ("GSD") for 26 years. GSD is a school serving deaf and special needs children. The Department charged Niemeier with

violations of the Code of Ethics for Educators following two separate incidents involving students on August 28, 2002.

The first incident occurred during Niemeier's morning PE class, and involved J. S., a deaf middle school student. J. S. was observed hitting another student, W. B., in the head repeatedly, and Niemeier interceded to stop J. S.'s bullying antics. Even after Niemeier admonished J. S., he continued his bullying by hitting W. B. in the head with a ball. W. B. was crying and screaming, and his face was red. J. S. was preparing to throw the ball at W. B. again when Niemeier physically intervened.[1] Niemeier took J. S.'s arm, turned him around, knocked the ball out of his hands, and forced him to sit down on the bleachers. J. S.'s shirt was ripped during the physical intervention. J. S. reacted in an emotional outburst and yelled obscenities at Niemeier. Thereafter, J. S. continued to act out by throwing a 55-gallon trash can and a table across the floor.

Although J. S. later claimed that his back was injured during the incident with Niemeier, he initially made no complaints of injury. J. S. did not seek any medical treatment, and he participated in football warm-ups that afternoon. J. S. did not report the incident to anyone until after he was told to perform extra drills during football practice as punishment for his misbehavior in class.

The second incident occurred during Niemeier's afternoon PE class, and involved a partially blind, deaf, and autistic student, Z. G. During the class, Z. G. became upset when Niemeier took away a pair of shoes that he was smelling. Z. G. reacted by picking up and dropping the heavy flaps on the bleachers in the gym. Z. G.'s conduct was dangerous and could have caused him harm. When Niemeier's PE aide attempted to intercede, Z. G. violently kicked her. Z. G. also threw a chair and a table across the floor.

Niemeier gave Z. G. a toy in an effort to calm and redirect him, but Z. G. threw the toy at Niemeier, hitting him on the shoulder. Z. G. then started pinching, spanking, and hitting himself. Niemeier testified that Z. G.'s self-abusive behavior did not seem to be harmful at first, but he intervened when Z. G. started hitting himself harder. Z. G. eventually became calm.

Z. G.'s teachers observed red marks and scratches on Z. G.'s shoulder and a bruise on his arm after he returned from PE class. They reported Z. G.'s injuries to the school's principal and superintendent. A few of the teachers who had interacted with Z. G. testified that he had engaged in self-abusive behavior on prior occasions. Yet,

---

[1] During his testimony, R. M., another student in Niemeier's PE class, admitted that he and J. S. had been picking on W. B. "pretty bad" and that W. B. was crying. Moreover, J. S. admitted that he had hit W. B. in the head with the ball, that W. B. was crying, and that he continued to throw the ball at W. B. despite Niemeier's directions to stop.

none of Z. G.'s teachers specifically knew how his injuries were inflicted on this occasion. Z. G. had been to art class before he was taken to Niemeier's PE class, and Niemeier testified that Z. G.'s red marks were present before Z. G. arrived. The PE aide testified that she did not observe Niemeier strike Z. G. during the class.

At the hearing, several of the school's experienced teachers and administrators and a stipulated expert testified that physical intervention is necessary and appropriate to prevent a student from bullying or causing injury to himself or to others. The testimony also reflected that the "time out" technique is commonly used to give emotionally explosive autistic students a chance to cool off, and that autistic students generally must be calmed before they can be redirected. The PE aide, who was present and observed both incidents, testified that Niemeier did not restrain J. S. any differently than other teachers imposing physical intervention, and that he did not strike Z. G. during the class.

Nevertheless, as a result of the two incidents, the Department charged Niemeier with violations of the Code of Ethics for Educators Standard 2 governing abuse of students and Standard 10 governing professional conduct.[2] The Department issued a notice of dismissal to Niemeier on October 9, 2002. Niemeier requested a hearing to contest his termination. A hearing was subsequently conducted by an ALJ with the Office of State Administrative Hearings ("OSAH") who concluded Niemeier's dismissal was authorized.

Niemeier thereafter appealed the ALJ's initial decision to the Board. In its final decision, the Board reversed the ALJ's decision and concluded that the evidence failed to prove the charges against Niemeier by a preponderance of the evidence. The Board's final decision was affirmed by the Superior Court of Floyd County.

In the instant appeal, the Department claims that the Board erroneously reversed the ALJ's initial decision and failed to give due regard to the ALJ's opportunity to personally observe witnesses and determine witness credibility. The Department additionally claims the Board violated OCGA § 50-13-41 (d) by rejecting the ALJ's proposed findings without giving reasons for doing so in the form of findings of fact and conclusions of law.

---

[2] The charges were also presented to the Professional Standards Commission ("PSC"), an agency that regulates educators. However, the PSC determined that there was no probable cause to support the alleged violations against Niemeier.

## *The Board's Authority to Issue Additional Findings and Conclusions*

As correctly asserted by the Department, OCGA § 50-13-41 (d) requires that "[i]n reviewing initial decisions by the [OSAH], the reviewing agency shall give due regard to the [ALJ's] opportunity to observe witnesses."[3] Based on this provision, the Department contends that the Board is not authorized to reverse the ALJ's credibility determinations. However, OCGA § 45-20-9 (e) (2) and Ga. Comp. R. & Regs. r. 478-1-.20.305.3 expressly provide that "[o]n review of the entire record from the [ALJ], the [B]oard shall have all the powers it would have in presiding at the reception of the evidence." Accordingly, OCGA § 45-20-9 (e) (2) and Ga. Comp. R. & Regs. r. 478-1-.20.305.3 authorize the SPB to make its own findings of fact, determine witness credibility, weigh the evidence, and issue conclusions of law based on its review of the record evidence. See *Ga. Dept. of Human Resources v. Odom*, 266 Ga. App. 493, 496 (597 SE2d 559) (2004); OCGA § 50-13-41 (e) (1) (A reviewing agency is authorized "to reject or modify" the ALJ's decision within 30 days following its entry.).

To the extent that OCGA § 45-20-9 (e) (2) and Ga. Comp. R. & Regs. r. 478-1-.20.305.3 conflict with OCGA § 50-13-41 (d), we look to the general rules of statutory construction. See *Hooks v. Cobb Center Pawn & Jewelry Brokers*, 241 Ga. App. 305, 309 (6) (527 SE2d 566) (1999). "In this regard, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any *inconsistency* between them." (Citation and punctuation omitted; emphasis in original.) Id. Moreover, when an older statute conflicts with a more recent statute, the older statute must yield to the more recent statute if the more recent statute appears to give comprehensive expression to the whole law on the subject. See id.

Applying these rules of construction, we conclude that OCGA § 45-20-9 (e) (2) comprehensively and specifically regulates the SPB's authority in its review of an ALJ's initial decision following a dismissal or adverse personnel action hearing. While OCGA § 50-13-41 (d), the latter enacted statute, applies generally to administrative hearings conducted by OSAH, it does not comprehensively express the whole law on the subject of the SPB's review of an ALJ's initial decision. Because OCGA § 45-20-9 provides the more specific, comprehensive expression of the SPB's authority on review of an ALJ's

---

[3] According to OCGA § 50-13-42 (b), OSAH hearing procedures set forth in Article 2 of Chapter 13 of Title 50, shall apply to hearings conducted on behalf of the SPB pursuant to OCGA §§ 45-20-8 and 45-20-9.

decision, it controls.[4] Our conclusion is reinforced by that fact that the language found in OCGA § 45-20-9 (e) (2) specifically giving the Board "all the powers it would have in presiding at the reception of the evidence" has remained intact despite several revisions to the statute.[5] Thus, we conclude the Board was authorized to make its own findings of fact as if it had presided at the reception of the evidence, regardless of the ALJ's credibility determinations.

The Department's reliance on *Atkinson v. Ledbetter*, 183 Ga. App. 739 (360 SE2d 66) (1987) is misplaced. *Atkinson* involved an administrative appeal of a decision to terminate a claimant's benefits under an aid to families with dependent children grant whereas the instant case involves a dismissal hearing for a state merit system employee to which OCGA § 45-20-9 specifically applies. As such, *Atkinson* is distinguishable and does not apply here.[6]

Instead, we find *Odom*, supra, involving a state employee's dismissal action to be more factually apposite. In *Odom*, the hearing was conducted before an OSAH ALJ, who made factual findings and conclusions of law pertaining to the evidence of the case. In its review of the ALJ's initial decision, however, the Board reversed the ALJ's decision as to the employee's dismissal, and concluded in its final decision that the Department had proven the charges by a preponderance of the evidence. On appeal under OCGA § 45-20-9 (m), the superior court reversed the Board's decision and remanded the case to the Board with directions to reinstate the ALJ's decision. However, we reversed the superior court holding that "[t]he [B]oard is the sole judge of the evidence, of the credibility of the witnesses, and as to what evidence it will credit as the basis for an award." Id. at 496.

In this case, as in *Odom*, the Board was authorized to review the ALJ's initial decision based on the entire record. The Board was further authorized to issue its own additional findings based on the record evidence and to determine that the evidence of record did not prove the charges at hand by a preponderance of the evidence. See

[4] We further note that OCGA § 45-20-9, enacted in 1976 to amend Ga. L. 1975, p. 79, was recently revised in 1998 to incorporate the current subsection (a) which provides for the procedure of filing a written appeal with OSAH. See Ga. L. 1976, p. 1547, § 4; Ga. L. 1998, p. 823, § 2. OCGA § 50-13-41, enacted in 1994, was most recently revised in 1998 to provide for the conduct of OSAH hearings in accordance with the rules of Article 2 of Chapter 13 of Title 50. See Ga. L. 1994, p. 1856, § 3; Ga. L. 1995, p. 1072, § 6; Ga. L. 1998, p. 750, § 10.

[5] See Ga. L. 1976, p. 1547, § 4; Ga. L. 1979, p. 780, §§ 5-7; Ga. L. 1982, p. 3, § 45; Ga. L. 1990, p. 8, § 45; Ga. L. 1997, p. 844, § 3; Ga. L. 1998, p. 823, § 2.

[6] Moreover, in *Atkinson*, the Board affirmed the ALJ's decision, but added findings that were not supported by the evidence of record and which "consist[ed] of conjecture, speculation, and impermissible inferences." Id. at 741 (2) (d). As such, this court ruled that there was no evidence to support the final decision of the Board. The instant case, however, is distinguishable from the circumstances presented in *Atkinson*. While the Board in the instant case made additional findings, it did so on evidence of record. Id.

OCGA § 45-20-9 (e) (2). See also Ga. Comp. R. & Regs. r. 616-1-2-.21 (4); *Holland v. Tootle*, 124 Ga. App. 186, 187 (1) (182 SE2d 898) (1971) (when the evidence is in conflict and the factfinder is in doubt as to where the preponderance of the evidence rested, the doubt should be solved in favor of the party that does not have the burden of proof). See also, e.g., *Bankhead Enterprises v. Beavers*, 267 Ga. 506 (480 SE2d 840) (1997); *Russ v. American Tel. & Telegraph*, 228 Ga. App. 858 (493 SE2d 46) (1997) (The Board's appellate division may review the ALJ's findings of fact and is authorized to reverse the ALJ's decision if it is not supported by a preponderance of the evidence.).

### *The Board's Issuance of Written Findings of Fact and Conclusions of Law*

"The Board, when requested to review the record of an appeal, shall make its own findings of fact and conclusions of law which may be by adopting the findings, conclusions and decision of the [ALJ]." Ga. Comp. R. & Regs. r. 478-1-.20.402. When the Board "rejects or modifies a proposed finding of fact or a proposed decision, it shall give reasons for doing so in writing in the form of findings of fact and conclusions of law." OCGA § 50-13-41 (d).

In this case, the Board's final decision adopted most of the ALJ's findings and conclusions. While the Board did exclude some findings of the ALJ, it also made additional findings and conclusions based on the record evidence. The Board's additional findings cited to the testimony of several other school staff members, a stipulated expert, and the PSC report included as an exhibit in the record. Based on its findings of fact, the Board concluded that the evidence failed to prove the charges against Niemeier by a preponderance of the evidence. Such findings of fact and conclusions of law adequately explain the Board's decision, and the basis for its decision is clear. See *Odom*, supra at 498. The Board's final decision met the requirement of OCGA § 50-13-41 (d).

A superior court reviewing a Board's decision pursuant to OCGA § 45-20-9 (m) must affirm the Board's decision if there is any evidence to support it. OCGA § 45-20-9 (m); *Odom*, supra at 495; *Shaw*, supra at 34 (1). The Board's final decision made specific citations to the record to demonstrate the evidence upon which its decision was based. Since there was evidence to support the Board's final decision, the trial court properly upheld the Board's decision.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 29, 2005.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Stefan E. Ritter, Rebecca S. Mick, Kristin L. Miller, Assistant Attorneys General,* for appellant.
*Lloyd C. Burton,* for appellee.