215 N.J. Super. 342 (1987)
521 A.2d 1319
R.K., APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES, DIVISION OF PUBLIC WELFARE, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1987.
Decided February 26, 1987.
*343 Before Judges ANTELL and BRODY.
John M. Chomko argued the cause for appellant (Camden Regional Legal Services, Inc., attorney; Amy N. Mack on the brief).
*344 Teresa M. Burzynski, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Dorothy J. Donnelly, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
The Burlington County Board of Social Services reduced from $385 to $202 the monthly grant to R.K. and her children T and S, an eligible unit receiving Aid to Families With Dependent Children (AFDC). The reduction is the amount of assistance that had been given R.K. as the caretaker relative of the children. She lost this sum because the Board concluded that she was withholding the identity of T's father. The Director of the New Jersey Division of Public Welfare (the Director), adopting the initial decision of an administrative law judge (ALJ), affirmed the action of the County Board. R.K. appeals.
The Board had begun providing assistance around the time of T's birth in August 1980. At the behest of the Board, R.K. commenced a paternity action against F.R., who she said was T's father. The action was apparently dismissed when a Human Leucocyte Antigen (HLA) blood test, administered in March 1981, excluded F.R. from being T's father. Through "administrative error" the Board continued the grant without making any further effort to learn the identity of T's father until the fall of 1984, when R.K. applied for increased assistance on account of the birth of S, her second child. F.R. is not S's father.
A Board worker confronted R.K. in 1984 with the report of the 1981 HLA blood test. R.K. responded that the blood test must be wrong because F.R. is T's father. She continues to maintain that fact. The Board concluded that R.K. was concealing evidence of the true identity of T's father and reduced the grant.
*345 "Cooperation" by an AFDC applicant, an eligibility requirement under N.J.A.C. 10:81-11.2(a)3, includes "[a]ppearing at the offices of the appropriate child support agencies as necessary to provide oral or written information, or documentary evidence relevant to obtaining support, which is known to, possessed by or reasonably obtainable by the client." N.J.A.C. 10:81-11.5(d)1. If R.K. has been concealing the identity of T's father, she would be violating the cooperation requirement. The result of an HLA blood test that contradicts information given by an applicant may be used as evidence that the applicant is concealing the truth.
R.K. argues that the ALJ and the Director erroneously treated the results of the blood test as conclusive evidence that F.R. is not T's father and that R.K. is concealing the father's true identity. We agree. The ALJ made the following findings:
In this matter, the HLA blood sample paternity test determined the type of white bloodcell antigens which are possessed by the respondent, her son, and the putative father. Every human has four different antigens, and these could be any combination of four different antigens from the 40 antigens appearing in the human race. It is also known that each person has two antigens in common with his mother and two in common with his father. In the usual paternity case, it is determined which of the child's antigens he has in common with his mother, and then the child's two remaining antigens which were inherited from his true father are compared with the four antigens from the putative father to see if any of the antigens match up. In this matter, F.R. is excluded as the father of the child since he possesses neither of the antigens which the child inherited from his true father.[1]
Since F.R. is excluded as the father of the child as a result of the HLA blood sample paternity test, and since the respondent has continued to insist that F.R. is the father of her child, despite the scientifically reliable HLA blood test, I must CONCLUDE, based upon the foregoing findings of fact and the applicable regulations, that the petitioner County Welfare Agency may properly reduce the respondent's AFDC grant from $385.00 to $202.00 per month by deleting *346 the respondent from the eligible unit as a result of the respondent's failure to cooperate with the Child Support and Paternity Unit in establishing paternity.
The ALJ and the Director treated the test results as conclusive on the issue of paternity. The ALJ found that "F.R. is excluded as the father of the child since he possesses neither of the antigens which the child inherited from his true father." The Director concluded that "[i]n view of the scientific reliability of the HLA test and the acceptance of finding[s] from this procedure by the court, the person named by the respondent must be excluded as the father of T.K."
When properly performed, HLA tests are admissible but they are not conclusive evidence of exclusion of paternity. N.J.S.A. 9:17-51e renders such tests "receivable in evidence, but only in cases where definite exclusion is indicated" if performed by "a qualified expert appointed by the court," N.J.S.A. 9:17-51a, or "by other qualified experts," N.J.S.A. 9:17-51b, whose qualifications have been accepted by the court. N.J.S.A. 9:17-51c. The Legislature has specifically recognized, however, that HLA test results that exclude paternity are not conclusive:
Expert testimony pertaining to these tests may be requested by the parties. The order for such blood tests or genetic tests also may direct that the testimony of such experts and of the persons so to be examined be taken by deposition. The court, upon application and for good cause shown, may limit the admissibility of the blood tests or genetic tests. [N.J.S.A. 9:17-51e]
The ALJ and the Director mistakenly believed that an HLA blood test that excludes paternity, and is thereafter admitted into evidence under N.J.S.A. 9:17-51, conclusively establishes nonpaternity. The statute does not so provide; it recognizes the continued relevance of the testimony of "persons so to be examined." F.R. did not testify. R.K. testified that she had sexual relations with F.R. during the period when T was conceived; that she never had sexual relations with anyone other than F.R. before she became pregnant with T; that when she told F.R. she was pregnant he encouraged her "to get an abortion"; that when F.R. visited her after T's birth, "he said the baby looked like him"; that when she shopped at a market where F.R. worked he said, "[L]et me hold my son" and he took *347 the baby and held him "for a couple of minutes." There is no evidence that explains why R.K. would persist in falsely naming F.R. as T's father knowing that by doing so she will lose money that she desperately needs.
On cross-examination R.K. answered "No" when asked, "Ms. [K.] at any time did [F.R.] acknowledge himself as the father of the child?" The paralegal[2] who represented her did not explore what she meant by that answer, which appears to contradict her testimony on direct examination that F.R. had circumstantially acknowledged paternity to her. Without passing on R.K.'s credibility, we emphasize that receipt into evidence of an HLA blood test result that excludes paternity does not relieve a factfinder of the duty to consider as well all other evidence pertinent to the paternity issue. Accord, Amos v. Dept. of Health and Rehab. Services, 444 So.2d 43, 47 (Fla. App. 1st Dist. 1983).
There must be a new hearing and not simply a remand to reconsider the evidence already adduced. R.K.'s paralegal was apparently under the erroneous impression that because N.J.S.A. 9:17-51 rendered the HLA blood tests generally admissible, he could not object to admissibility of the 1981 test result even though the Board had produced no evidence that the test had been properly performed. A properly performed test may be scientifically accepted and therefore admissible, but admissibility of a particular test result requires proof that the test was properly performed. State v. Walker, 37 N.J. 208, 215 (1962), cert. den. 371 U.S. 850, 83 S.Ct. 89, 9 L.Ed.2d 86 (1962).
The written report of the test result is hearsay and it constitutes the only basis for the Director's final determination. Although hearsay is admissible in administrative proceedings, there must be a residuum of trustworthy evidence to support *348 an agency's final determination. Weston v. State, 60 N.J. 36, 50-51 (1972). Ordinarily the report of a chemical analysis is admissible as a trustworthy business entry under Evid. R. 63(13) if evidence is presented of the "`method and circumstances' involved in the preparation" of the report. State v. Matulewicz, 101 N.J. 27, 30 (1985). The Court identified the kind of evidence that would "elucidate" the preparation of such a report as follows:
Consequently, proofs should be adduced to reflect the relative degrees of objectivity and subjectivity involved in the procedure; the regularity with which these analyses are done; the routine quality of each analysis; the presence of any motive to single out a specific analysis for the purpose of rendering an untrustworthy report, and the responsibility of each... chemist to make accurate and reliable analyses. [Ibid.]
N.J.S.A. 9:17-51 does not eliminate the need to establish the admissibility of a particular HLA blood test result in accordance with the Matulewicz criteria. The statute requires the court to entertain a request by any party for expert testimony and authorizes the court to "limit the admissibility of the blood tests or genetic tests." Here there was no evidence that would satisfy the Matulewicz criteria of trustworthiness.
A party may, of course, agree to the admissibility of evidence and we do not mean to discourage that wholesome practice. The interests of justice here, however, require that admissibility and the weight given the test result be reconsidered. R.K.'s paralegal mistakenly believed that N.J.S.A. 9:17-51 required the ALJ to receive into evidence any HLA blood test result that excluded paternity. Matulewicz was decided after the hearing below and it clarified an area of evidence law that had previously been uncertain.
Also, while this appeal was pending, R.K. sought a stay on a showing that generally accepted criteria for properly performing an HLA blood test were not followed in this case. We issued the stay and sua sponte ordered a second blood test. The report of that test also excluded F.R. as T's father but three of F.R.'s four antigens as shown in the report of the second test were different from three antigens as shown in the *349 test report relied upon by the Director. One or both tests therefore must be wrong in that important respect. The matter can only be resolved with expert testimony. If expert testimony is unavailable to establish the trustworthiness of one of the previous HLA blood tests, a new test will have to be performed.[3]
We reverse and remand for further proceedings consistent with this opinion.
NOTES
[1] The parties do not dispute the ALJ's explanation of an HLA blood test. Although not based on evidence at the hearing, the explanation essentially conforms to the explanation found in Terasaki, "Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing," 16 J.Fam.L. 543 (1977-78). See Malvasi v. Malvasi, 167 N.J. Super. 513, 515 n. 2 (Ch.Div. 1979).
[2] R.K. was represented at the hearing by a paralegal employed by the Camden Regional Legal Services pursuant to R. 1:21-1(e)(4).
[3] The test we ordered was performed in South Carolina.