Bonnie B. **ERICKSON**, Petitioner, Appellant,

v.

**COMMISSIONER OF THE DEPARTMENT OF HUMAN SERVICES FOR THE STATE OF MINNESOTA**, Beltrami County Social Services, Respondents.

No. C7–92–1216.

Court of Appeals of Minnesota.

Dec. 22, 1992.

Douglas P. Johnson, Legal Services of NW MN, Bemidji, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Fabian Hoffner, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Dept. of Human Services.

Timothy R. Faver, Beltrami County Atty., Tim Tingelstad, Asst. Beltrami County Atty., Bemidji, for Beltrami County Social Services.

Considered and decided by RANDALL, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

DAVIES, Judge.

In February 1986 respondent Beltrami County Social Services Agency denied appellant Aid to Families with Dependent Children ("AFDC") benefits for her personal needs on the ground that she was not cooperating in establishing the paternity of her child. This decision was affirmed by respondent Commissioner of the Minnesota Department of Human Services ("DHS") in 1986, by the district court in 1987, again by the Commissioner in 1991, and by the district court in 1992. Appellant now challenges the district court's 1992 order affirming the Commissioner's 1991 decision. We reverse and remand.

## FACTS

The parties do not dispute the material facts. On January 6, 1982, appellant Bonnie Erickson gave birth to a son. She applied for and began receiving AFDC benefits from the Beltrami County Social Services Agency ("BCSSA"). In order to receive benefits, appellant was required to cooperate in establishing the paternity of her child.

She stated that the only possible fathers of her son were R.O., who gave a blood sample in Minnesota, and J.S., who gave a blood sample in Texas. The blood tests excluded both men as possible fathers. Because the blood tests excluded the only men named by appellant as possible fathers, the BCSSA determined appellant was not cooperating in establishing the paternity of her child. Consequently, it sanctioned her in February 1986 by eliminating AFDC benefits allotted for her personal needs.

Appellant appealed the BCSSA's decision to the DHS. At a hearing before an ap-

peals referee, appellant testified that she could supply no other names and questioned whether the man who gave a blood sample in Texas was in fact J.S. She introduced photographic exhibits on the point.

The referee made express findings of fact: (1) appellant attended interviews as required by the BCSSA to provide information about the paternity of her son, (2) she named two men who could be the possible father, (3) she stated there were no others who could be the father, and (4) blood tests excluded both men as the possible father. The referee stated the "courts have held that * * * blood tests are worthy of 'decisive and controlling evidentiary weight' when determining the paternity of a child." Since both men named by appellant were excluded as possible fathers, the referee, on behalf of the Commissioner, affirmed the BCSSA's decision.

Appellant appealed this decision and, in 1987, the district court affirmed the ruling in a decision that was not appealed.

Three years later, in 1990, appellant reapplied for full AFDC benefits. The BCSSA denied the application for benefits for her personal needs by reaffirming its earlier decision. Appellant appealed the BCSSA's decision to the DHS.

At a hearing held before an appeals referee, appellant called a new witness, J.S.'s former wife, who supported appellant's contention that J.S. was not the man who gave the blood sample in Texas. Appellant's testimony at the hearing did not change from her original testimony. The BCSSA offered no new evidence.

The referee recommended that the BCSSA's decision be affirmed because appellant's new evidence was not sufficient to overturn the district court's 1987 decision and because the original decisions by the Commissioner and the district court were res judicata. The Commissioner adopted the referee's recommendation and dismissed the appeal. Appellant appealed the decision to the district court, which, in 1992, affirmed the Commissioner's decision. Appellant now appeals from the district court order.

## ISSUES

I. Is appellant's second administrative proceeding controlled by res judicata, collateral estoppel, or law of the case?

II. Did the Commissioner's decision that appellant did not cooperate in establishing the paternity of her child prejudice her substantial rights?

## ANALYSIS

### I.

■ Respondent BCSSA argues that this court should not reach the merits of appellant's claim because the claim is barred by the doctrine of res judicata. We review de novo whether the doctrine of res judicata can apply to a given set of facts. *Hennepin County v. Hanneman*, 472 N.W.2d 149, 152 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 29, 1991). If the doctrine applies, the decision whether to actually apply it is left to the discretion of the trial court. *Regents of Univ. of Minn. v. Medical Inc.*, 382 N.W.2d 201, 207 (Minn.App. 1986), *pet. for rev. denied* (Minn. Apr. 18, 1986), *cert. denied*, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986).

The doctrines of res judicata, collateral estoppel, and law of the case may apply to successive "administrative decisions when an agency acts in a judicial or quasi-judicial capacity." *Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 115–16 (Minn.1991); *Hough Transit, Ltd. v. Harig*, 373 N.W.2d 327, 332 (Minn.App.1985). Collateral estoppel and res judicata are not rigidly applied, however, and they " 'are qualified or rejected when their application would contravene an overriding public policy.' " *AFSCME v. Arrowhead Regional Corrections Bd.*, 356 N.W.2d 295, 299 (Minn.1984) (quoting *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir.1971)).

More recently, we have stated "res judicata may not be as applicable to administrative agencies as it is to courts." *Wangen v. Commissioner of Pub. Safety*, 437 N.W.2d 120, 123 (Minn.App.1989), *pet. for rev. denied* (Minn. May 12, 1989).

"Court decisions are reflected in a judgment which is docketed and final; the trial court's work is at an end with regard to the matter. In the administrative process, however, agencies typically exert continuing supervisory and regulatory jurisdiction over the affected person. In addition, administrative policies are in a constant state of change, and administrative decision-makers are not only adjudicating but often policy-making. Finally, administrative agencies are charged by a legislative body with protecting public health, safety, and welfare, not merely resolving past adjudicative facts in light of existing law."

*Id.* (quoting William J. Keppel and Dayton Gilbert, *Minnesota Administrative Practice and Procedure* § 624 at 119–20 (1982)).

█ The rationale stated in *AFSCME* and *Wangen* for not giving preclusive effect to earlier decisions applies here. First, public policy is involved because the AFDC program provides financial assistance on the basis of need to children and the parents or relatives who care for them. *See Heckler v. Turner,* 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985). Second, the BCSSA has continuing supervisory and regulatory jurisdiction over appellant, which could continue until the year 2000, when her son will become 18 years old. Third, the BCSSA is charged with protecting the welfare of AFDC recipients. Finally, the passage of time under the particular facts of this case renders the earlier decision inapplicable to the changed circumstances of the situation as it is today. For these reasons, we hold that appellant's claim is not barred by res judicata or related doctrines.

## II.

█ Since appellant's claim is not barred, we reach the merits of her claim. When a district court has acted as an appellate tribunal by reviewing an agency decision, this court independently reviews the agency's record. *Evenson v. City of St. Paul Bd. of Appeals,* 467 N.W.2d 363, 365 (Minn.App.1991), *pet. for rev. denied* (Minn. May 10, 1991).

█ Under the Administrative Procedure Act, a reviewing court must uphold the decision of an administrative agency unless the substantial rights of the petitioner have been prejudiced because, among other defects, the decision is not supported by "substantial evidence in view of the entire record as submitted" or the decision is arbitrary or capricious. Minn.Stat. § 14.69(e)–(f) (1990). The party appealing the agency decision has the burden of proving that the agency decision violates one of the statute's provisions. *See Markwardt v. State, Water Resources Bd.,* 254 N.W.2d 371, 374 (Minn.1977).

If a state administers its AFDC program in accordance with applicable federal statutes and regulations, the state will be partially reimbursed for the grants it makes. *Heckler,* 470 U.S. at 189, 105 S.Ct. at 1141; 42 U.S.C. § 602 (1988). Minnesota administers its AFDC program in accordance with federal law. *See* Minn.R. 9500.2000 (1991). By federal statute each AFDC applicant must

cooperate with the State * * * in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed.

42 U.S.C. § 602(a)(26)(B) (1988).

Federal regulations define cooperation: The [State] plan shall specify that *cooperate* includes any of the following actions that are relevant to, or necessary for, the achievement of [among other things, establishing paternity]:

(1) Appearing at an office of the State or local agency or the child support agency as necessary to provide verbal or written information, or documentary evidence, known to, possessed by, or reasonably obtainable by the applicant or recipient;

\* \* \* \* \* \*

(3) Providing information, or attesting to the lack of information, under penalty of perjury.

45 C.F.R. § 232.12(b) (1991) (emphasis in original). If the child's caretaker fails to cooperate, the state must deny assistance

to the caretaker (while continuing to provide full assistance to the child). *Id.* at § 232.12(d).

Since appellant first applied for AFDC benefits (after her son was born in 1982), she has steadfastly maintained that the only possible fathers of her son are J.S. and R.O. Twice in DHS hearings she has attested to this fact under penalty of perjury. This is an attestation of lack of further information sufficient to satisfy 45 C.F.R. § 232.12(b)(3).

■ An AFDC applicant's attestation of lack of further information creates a presumption of cooperation. *Tomas v. Rubin,* 926 F.2d 906, 910 (9th Cir.1991). The agency, the BCSSA in this case, must accord some weight to the attestation in deciding whether an AFDC applicant is cooperating. *See S.N.S. v. North Dakota Dep't of Human Servs.,* 474 N.W.2d 717, 720–21 (N.D. 1991); *B.K. v. Department of Health & Rehab. Servs.,* 537 So.2d 633, 636 (Fla.Dist. Ct.App.1988); *R.K. v. Department of Human Servs., Div. of Pub. Welfare,* 215 N.J.Super. 342, 521 A.2d 1319, 1322 (App. Div.1987). The agency can overcome this presumption of cooperation if it can show, by substantial evidence, either that the attestation was false or that the applicant failed to cooperate according to one of the other categories specified by 45 C.F.R. § 232.12(b). *Tomas,* 926 F.2d at 910. *Accord Doston v. Duffy,* 732 F.Supp. 857, 871 (N.D.Ill.1988); *S.N.S.,* 474 N.W.2d at 720–21.

We conclude the district court's order must be reversed for two reasons.

■ First, the BCSSA's continuing determination of noncooperation, as applied to the facts and circumstances of appellant's situation today, is arbitrary and capricious. *See* Minn.Stat. § 14.69(f). Assuming the BCSSA's original noncooperation determination in February 1986 was reasonable, as we must, the passage of time without supporting evidence has rendered it unreasonable, and therefore arbitrary, today.

Implicit in the BCSSA's noncooperation determination is the assumption that appellant is withholding the name of the possible father of her son and that appellant has it within her power to have the sanction lifted at any time by naming the father of her son. We believe appellant's attestation of no further information, together with the facts that she has not named anyone else as a possible father in the more than six and a half years she has been subject to the sanction and that the agency offers no evidence she has further information, are sufficient for a determination under 45 C.F.R. § 232.12(b) that she is cooperating adequately in establishing the paternity of her son. Under these facts, the BCSSA's conclusion that she has information is no longer reasonable.

■ Second, the BCSSA's decision is not supported by "substantial evidence in view of the entire record as submitted." *See* Minn.Stat. § 14.69(e). The BCSSA bases its claim of noncooperation by appellant exclusively on the presumption, treated by the agency as conclusive, that since both men named by appellant were excluded by allegedly valid blood tests, appellant is not cooperating. The BCSSA has not alleged any other facts to show that appellant has failed to cooperate.

The record shows that the BCSSA never accorded any weight to appellant's attestation of no further information concerning who could be the father of her son. The cases uniformly hold that exclusion of all named possible fathers by blood tests cannot alone establish noncooperation. *Doston,* 732 F.Supp. at 871 ("a policy of presuming [AFDC] clients, who named a father excluded by blood tests, are noncooperative on the basis of the blood test alone," violates the due process clause of the U.S. Constitution and also 45 C.F.R. § 232.12(b)); *S.N.S.,* 474 N.W.2d at 720–21; *B.K.,* 537 So.2d at 636; *Atkinson v. Ledbetter,* 183 Ga.App. 739, 360 S.E.2d 66, 67 (1987); *R.K.,* 521 A.2d at 1322.

■ Respondent BCSSA argues that it must be able to rely on blood tests to establish noncooperation. For support, the BCSSA indicates that the Minnesota Legislature has, at least for purposes of establishing paternity, given controlling weight to blood test results in which the likelihood

of paternity is 99 percent or greater. Minn.Stat. § 257.62, subd. 5(b) (1990). We are not saying blood tests cannot constitute evidence of noncooperation. We are saying that blood tests alone do not create a conclusive and perpetual presumption of noncooperation, that all evidence must be considered in making the determination of noncooperation, and that blood tests are only a part of that evidence.

Having ruled that appellant is eligible for full benefits, we further hold that appellant's eligibility is retroactive to the time of her renewed application. *See Grubb v. Sterrett*, 315 F.Supp. 990, 995–96 (N.D.Ind.) (stating there is a "federal requirement that corrective payments are to be made retroactive to the date the incorrect action was taken when an appeal hearing is favorable to the claimant," holding AFDC benefits were to be paid "retroactive to the date of the incorrect denial or termination"), *aff'd*, 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970). We reverse the district court's affirmance of the Commissioner's decision and remand to the Commissioner for appropriate action in accordance with this opinion.

## DECISION

Res judicata and related doctrines do not bar appellant's second administrative proceeding for benefits. The fact that appellant has been subject to the sanction for more than six and a half years but has not named anyone else as a possible father, indicates, absent contrary evidence, that she is cooperating. The BCSSA cannot rely on blood tests alone to presume conclusively that appellant is not cooperating. The BCSSA must pay appellant the AFDC benefits she is entitled to, retroactive to the date of her application to the BCSSA giving rise to this appeal.

Reversed and remanded.

KALITOWSKI, Judge (concurring in part, dissenting in part).

I concur in the majority's determination that the trial court erred in refusing to hear appellant's claim on the basis of res judicata. However I reach this conclusion for a different reason. I would hold res judicata does not apply on the limited grounds that appellant's circumstances have changed because she has now filed an attestation of no further information.

I respectfully dissent concerning the relief granted appellant. I believe this matter should be remanded to the Commissioner for a determination of appellant's cooperation in light of both her attestation of no further information and the provisions of 45 C.F.R. § 232.12(b) (1991).