Vicky HAZELTON, petitioner,
Appellant,

v.

COMMISSIONER OF the DEPARTMENT OF HUMAN SERVICES FOR the STATE of Minnesota, Respondent,

Beltrami County Human Services,
Respondent.

No. C5–00–158.

Court of Appeals of Minnesota.

July 3, 2000.

Douglas P. Johnson, Legal Services of Northwest Minnesota, Bemidji, MN (for appellant).

Mike Hatch, Attorney General, Suzette Schommer, Assistant Attorney General, St. Paul, MN; and Timothy R. Faver, Beltrami County Attorney, David P. Frank, Assistant County Attorney, Bemidji, MN (for respondents).

Considered and decided by DAVIES, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant received public assistance for herself and her minor children under the Minnesota Family Investment Program. She also received food-stamp benefits on behalf of her adult son, but he left her household a few months after that assistance began. Respondents initiated an investigation, suspecting that appellant had committed an intentional program violation by misrepresenting to respondents that no one for whom she was receiving benefits had left her household. The Commissioner of Human Services ultimately concluded that appellant had committed an intentional program violation. Appellant appealed to the district court, and the agency's decision was affirmed. Appellant now appeals to this court, and we hold that there is not substantial evidence to sustain the determination that appellant committed an intentional program violation. We, therefore, reverse.

## FACTS

Appellant Vicky Hazelton applied for public assistance in December 1997. The combined application required Hazelton to disclose all members of her household to respondent Beltrami County Human Services. She listed herself, her two minor children, and her adult son, Gary Hazelton, as members of the household. Gary did not qualify for cash assistance, but he was eligible to receive food-stamp assistance.

Hazelton received the notices of decision on the day she completed her application. She learned she was eligible for food-stamp assistance and that the benefit was based on a "household size" of four. She also received a notice of decision regarding her qualification for the AFDC program. This notice of decision specifically indicat-

ed that Gary was not eligible for participation in this program.

On January 9, 1998, Hazelton received two new notices of decision from Beltrami County Human Services. One notice, a food stamp notice of decision, indicated that her benefit was being reduced to $91 per month. The notice did not explicitly provide that the $91 per month benefit was calculated based on Gary's presence in the household. It did, however, indicate that Hazelton and the two minor children were no longer eligible for the food-stamp program. The second notice informed Hazelton that her public-assistance benefits were now a part of the Minnesota Family Investment Program (MFIP). According to the notice, this program was to replace AFDC and food stamps. That notice listed the household size as three and indicated that Gary was not eligible to receive MFIP benefits.

As part of the MFIP, Hazelton was required to participate in a job-training program. The program required Hazelton to attend meetings or provide her employment counselor with a valid excuse for missing a meeting. A client-contact-inquiry form maintained by her job counselor indicates that on February 23, 1998, Hazelton contacted her job counselor to inform her that she would not be able to attend the scheduled meeting because Gary was leaving that day to begin service with the United States Army.

In June 1998, Hazelton received a household-report form from the county. All program participants are required to complete one of these reports every six months. The first page of the report indicated in a boldface box that "Your REPORT MONTH(S) is June." Beneath the box, another line stated "[t]his is a MFIP Six Month Review." Hazelton completed the 4–page report and checked the "no" box in response to the question "[d]id anyone move out of your home in the report month(s)?"

Program participants are required to provide the county with what amounts to a benefit renewal application on an annual basis. In November 1998, Hazelton completed the recertification form. Hazelton indicated that she was completing the application on behalf of herself and two of her children. She did not indicate that she was applying for benefits for Gary. In response to the question of whether anyone had moved out of her household in the last 12 months, she answered "no."

This negative response coupled with her statement to a county employee that Gary had moved out in February 1998 led to the investigation that precipitated these proceedings. A fraud investigation was conducted to determine whether the county had made an overpayment. When it was determined that the county had overpaid Hazelton more than $900 in food stamps on behalf of Gary, proceedings were initiated to determine whether Hazelton had committed a disqualifying intentional program violation. The Commissioner of Human Services found that Hazelton had committed a program violation and that decision was affirmed following an administrative appeal. Hazelton moved the district court for an order reversing the administrative determination. The district court denied her motion and Hazelton appeals.

## ISSUE

Did respondents establish by substantial evidence that appellant committed an intentional program violation disqualifying her from receiving public assistance benefits?

## ANALYSIS

When a district court acts as an appellate court by reviewing an agency decision, this court performs an independent review of the agency record. *Erickson v. Commissioner of Dep't of Human Servs.*, 494 N.W.2d 58, 62 (Minn.App.1992).

Under the Administrative Procedure Act, a reviewing court must uphold the decision of an administrative agency un-

less the substantial rights of the petitioner have been prejudiced because, among other defects, the decision is not supported by "substantial evidence in view of the entire record as submitted." *Id.* (quoting Minn.Stat. § 14.69(e)-(f)). Substantial evidence is defined as:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

2. More than a scintilla of evidence;

3. More than some evidence;

4. More than any evidence; and

5. Evidence considered in its entirety.

*Cable Communications Bd. v. Nor-West Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984) (citation omitted). The party appealing the administrative decision has the burden of proving that the decision violates the Administrative Procedure Act. *Erickson*, 494 N.W.2d at 62.

Individuals who receive public assistance in Minnesota are required to notify the agency when certain events occur that have the potential to affect their eligibility to participate in the various programs. One of the events is a change in the number of people residing in the participant's household. Minn. R. 9500.4280, subp. 9 (1997). In addition to this requirement, participants in public assistance programs must periodically complete forms that are used to verify their continued eligibility.

Agencies that administer public assistance programs are required to investigate suspected abuses of those programs. Minn.Stat. § 256.046 (1998) (providing that local agencies shall initiate proceedings against program participants suspected of fraud). Abuse of these programs by the very people they are intended to assist does occur, and the agencies must do everything they can to limit and reign in abuse. Without vigilant efforts to control abuses, the integrity of the entire public-assistance system is jeopardized. Nonetheless, it is equally critical that the agency base any determination that a program abuse or violation occurred on substantial evidence.

■ In this case, the Beltrami County Human Services contends that Hazelton committed an intentional program violation by failing to notify it that her son moved out of her household and by falsifying the forms used to verify her continued eligibility. The Minnesota statutes governing public-assistance programs incorporate federal regulations for the purpose of determining whether an intentional program violation has occurred. Food-stamp program violations are governed by 7 C.F.R. § 273.16 (1999). An intentional violation of the food-stamp program occurs when one makes "a false or misleading statement, or misrepresented, concealed or withheld facts * * * ." 7 C.F.R. § 273.16(c). The agency has the burden of establishing an intentional program violation by clear and convincing evidence. 7 C.F.R. § 273.16(e)(6). We hold that there is not substantial evidence in the record to support the agency's determination that Hazelton committed an intentional program violation and that the agency did not meet its burden.

The agency's decision focuses on the six-month household report signed by Hazelton on July 1, 1998. But contrary to the agency's contention, Hazelton did not make a misrepresentation in connection with completing this form. The form is unclear and confusing. One sentence of the form states that it is "a MFIP Six Month Review," but a bolder, more conspicuous part of the form states that the "REPORT MONTH(S) is June." The agency determined that Hazelton's intentional program violation occurred as a result of her answer to the question on the form regarding whether anyone had moved "out of your home in the report month(s)?" Hazelton responded "no" to this question. The agency determined that this was a false statement.

The question apparently is intended to cover the entire report period, i.e., January through June of 1998. But the ques-

tion specifically asked Hazelton whether anyone had moved out of her home in June because that was the "report month" listed on the front of the form. Gary moved out of the household in February, and there is no evidence that anyone moved out of Hazelton's household in June. Because Hazelton's response to the specific question is not untrue, i.e., no one moved out of the household during the month of June, we hold that this response does not rise to the level of an intentional program violation.

We also hold that Hazelton's response to the annual recertification application was not an intentional program violation. Hazelton noted on the recertification form that she was completing the application on behalf of herself and her two minor children. She did not state that she was attempting to obtain benefits for Gary. Although she did check "no" in response to the question of whether anyone had left her household in the past year, there is not substantial evidence to conclude that her response was intentionally false or misleading. *See Erickson,* 494 N.W.2d at 62.

Respondent contends that the notices received by Hazelton informing her of the benefits that she was eligible for in January 1998 support the commissioner's decision. But the January 1998 notices are, like the six-month report, less than clear. The MFIP notice indicated that Hazelton was to receive those benefits for herself and her two minor children. It did note that Gary did not qualify for those benefits. The food-stamp notice indicated that Hazelton was eligible for an additional $91 each month. It did not, however, state that this benefit was being paid on behalf of Gary. Rather, it indicated that it was not being paid on behalf of relator and her minor children. Absent additional evidence, we are unwilling to impute knowledge to relator that the food-stamp benefit was being paid to her for Gary.

■ Respondents also contend that Hazelton would have received additional notices that she was receiving benefits on behalf of Gary. In fact, the commissioner's decision includes the following finding:

It is also assumed that the respondent would have received some of the later notices which would be sent as a matter of standard agency notification practice. Standard agency practice would require a renewed notice of the continuation of benefits for the son following the six-month review. Standard practice would also require another notice when the amount of basic Food Stamp benefit amount changed as it did in the fall of 1998.

While we acknowledge the deference typically paid to an agency's understanding of its own practices, there is no evidence produced by the agency to support the finding that these standard practices were actually followed in this case. Absent some evidence that the agency's standard practices were followed in this case, we cannot hold that this finding meets the substantial evidence test.

Finally, we are troubled by the referee's determination that Hazelton's contention that she did not know she was receiving benefits for Gary was not credible. Although not a basis for our decision, we note that this credibility determination was made in connection with a telephone hearing. The administrative rules specifically provide for telephone hearings, but:

With telephone testimony, the trier of fact can perceive some of the indicia of credibility, such as tone of voice, but cannot perceive others, such as body language.

*In re Bieganowski,* 520 N.W.2d 525, 528 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). We question the credibility determination because the evidence indicates that Hazelton freely admitted to her job counselor that her son was leaving the household in February, and she did not attempt to hide the fact that he had left when questioned in connection with the completion of the recertification form. But we need not decide whether the refer-

ee's credibility determination is support by substantial evidence because it does not form the basis of our conclusion.

program violation, and we, therefore, reverse.

**Reversed.**

## D E C I S I O N

The record does not contain substantial evidence to support the agency's decision that Hazelton committed an intentional