**CHANCELLOR MANOR, Respondent,**

v.

**Patsy THIBODEAUX, Appellant.**

No. C7–00–1599.

Court of Appeals of Minnesota.

May 22, 2001.

Chad McKenney, Donahue McKenney & Harlan, Ltd., Minneapolis, MN (for respondent).

Lisa Hollingsworth, Michael Hagedorn, Prior Lake, MN (for appellant).

Considered and decided by TOUSSAINT, Chief Judge, SHUMAKER, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge *

Appellant Patsy Thibodeaux was living in a Department of Housing and Urban Development (HUD)-subsidized housing project owned by respondent Chancellor Manor. Chancellor Manor terminated Thibodeaux's subsidy and lease agreement, alleging that she violated her lease agreement by failing to report income from two different jobs. Thibodeaux did not vacate the premises, and Chancellor Manor filed an unlawful detainer proceeding. The district court found that Thibodeaux had broken the terms of the rental agreement and ordered that a writ of restitution could issue immediately. We reverse and remand.

## FACTS

In April 1999, Thibodeaux filled out an initial eligibility questionnaire as part of the process to rent an apartment from Chancellor Manor. Chancellor Manor is a HUD-subsidized housing project. Thibodeaux entered into a lease with Chancellor Manor in July 1999. Thibodeaux signed a lease outlining the regulations for maintaining the subsidized rental assistance. The lease requires, in paragraph 19(a), that tenants notify Chancellor Manor if

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

"[a]ny adult member of the household who was reported as unemployed on the most recent certification or recertification obtains employment" or "[t]he household's income cumulatively increases $40 or more a month." At the time Thibodeaux entered into the lease, she was paying $119 in rent and was unemployed. Thibodeaux's sole source of income was Minnesota Family Investment Program (MFIP) assistance in the amount of $437 a month.[1]

The lease further provides, in paragraph 27(b), that:

> Any termination of the Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement. The Landlord may terminate this Agreement only for * * * the Tenant's material noncompliance with the terms of this Agreement.

In April 2000, Thibodeaux was informed that she would need to start her annual recertification process. While processing the recertification, Chancellor Manor discovered that Thibodeaux had been employed in the second and third quarters of 1999 and had failed to report this employment. Chancellor Manor discovered that Thibodeaux had worked at Rainbow Foods from July 1999 to October 1999 and then at Cub Foods from the end of October until December 1999. It was estimated that Thibodeaux made approximately $133 a week from these jobs. Chancellor Manor sent a letter to Thibodeaux in May 2000, notifying her of the noncompliance and lease violations resulting from the unreported income. The letter informed Thibodeaux that her subsidy would be retroactively terminated back to August 1, 1999, and that her lease would be terminated as of June 30, 2000.

On May 31, 2000, Thibodeaux met with the property manager of Chancellor Manor to appeal the decision to terminate her subsidy and lease. Thibodeaux explained that she did not report the income from her two jobs to Chancellor Manor because she thought that the income she had made from the two jobs was substantially equivalent to the amount she had been receiving from MFIP. Thibodeaux stated that she did not think she needed to report the income because she had not worked at either job for very long.

Chancellor Manor sent a letter to Thibodeaux on June 6, 2000, denying her appeal and affirming that Thibodeaux's rental subsidy would be terminated effective May 31, 2000, and that her lease would be terminated effective June 30, 2000. When Thibodeaux did not vacate the premises, an unlawful detainer was filed on July 19, 2000. An evidentiary hearing was held, and the district court found: "[Thibodeaux] has broken the terms of the rental agreement and [Thibodeaux] has failed to vacate the property after notice to do so." The court concluded that a writ of restitution could issue immediately.

### ISSUE

In an unlawful detainer proceeding in which the landlord, alleging the tenant's material noncompliance with the terms of the lease, seeks to oust a tenant from HUD-subsidized housing, must the trial court make a specific finding on the issue of material noncompliance?

### ANALYSIS

 An appellate court may not reverse a trial court due to mere disagreement with its findings. Rather, we will reverse a lower court's findings of fact only when those findings are clearly er-

---

1. MFIP is the state-run replacement of the federal AFDC welfare program.

roneous. Findings of fact are considered clearly erroneous only if they are not reasonably supported by the evidence. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 102 (Minn.1999) (citing Minn. R. Civ. P. 52.01). "If there is reasonable evidence to support the district court's findings, we will not disturb them." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999) (citation omitted).

In general in an unlawful detainer case, if the district court rules in favor of the landlord, the findings may be in the statutory language provided by Minn.Stat. § 504B.355 (2000): the court finds that "the facts alleged in the complaint are true, and the plaintiff shall recover possession of the premises and the defendant(s) shall vacate the premises immediately." But there is an exception in cases involving HUD-subsidized housing. HUD regulations are part of the lease. These regulations govern, among other things, the grounds upon which the landlord can terminate the lease. The provision that applies to the present case, found in paragraph 27(b) of the lease and quoted above, allows the landlord to terminate only upon "the tenant's *material noncompliance* with the terms" of the lease. (Emphasis added.) Although the regulations do not equate material noncompliance with fraud, the regulations state that in cases where a tenant fails to disclose changes in income or household residents, to be a material noncompliance the failure must have been fraudulent. *See HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs*, § 5–19.

"[I]t is important to differentiate tenant errors, which may be thought of as unintentional program violations, from fraud." *Id.* at 5–19(a). "Fraud is deceit or trickery deliberately practiced in order to gain some advantage dishonestly. Fraud is an intentional deception; it cannot be committed accidentally." *Id.* at 5–19(b). Providing false information is a material noncompliance with the lease and is grounds for termination of tenancy, but it must be shown that the tenant violated the law by intentionally misstating or withholding some material information. *Id.* at 5–19(c), (d).

If the failure to report is due to the tenant's misunderstanding of the rules or simply forgetting to report, the failure is not a material noncompliance. *See id.* at 5–19(a) (stating that tenant error, which occurs when tenant misunderstands or forgets the rules, is distinguishable from fraud). Thus, to rise to the level of material noncompliance, a failure to report must be fraudulent, i.e., a deliberate omission for the purpose of gaining some advantage. Consequently, in cases involving HUD-subsidized housing where the landlord alleges the tenant's failure to report material information, there must be a finding as to whether or not the failure to report was fraudulent.

In this case, the trial court did not make a finding on the issue of whether Thibodeaux's failure to report her earnings was fraudulent. Therefore, we remand for additional findings, and if appropriate, additional evidence on that issue.

One final issue deserves comment. In her brief, Thibodeaux cites *Hazelton v. Commissioner of Dep't of Human Servs.*, 612 N.W.2d 468, 471 (Minn.App.2000), for the proposition that, in this case, the landlord must prove fraud by clear and convincing evidence. The reference to the clear-and-convincing standard in *Hazelton* was based on 7 C.F.R. § 273.16(e)(6), which was issued by the United States Department of Agriculture and which governs terminations from the food stamp program. We have not been referred to

any similar regulations promulgated by HUD that govern terminations from a subsidized housing program. Consequently, we conclude that the level to which the landlord must prove fraudulent failure to report is by a preponderance of the evidence. *See State by Humphrey v. Alpine Air Prods.*, 500 N.W.2d 788, 790–91 (Minn. 1993) ("Minnesota common law also favors the use of the preponderance of the evidence standard in a civil fraud case. * * * We hold that unless otherwise indicated by the legislature, the standard of proof in all fraud cases is the preponderance of the evidence standard.").

## DECISION

The decision of the trial court is reversed, and the case is remanded for further findings and, in the court's discretion, additional evidence.

**Reversed and remanded.**