J.R.B., Petitioner, Appellant,

v.

DEPARTMENT OF HUMAN SERVICES, et al., Respondents.

No. C3–01–346.

Court of Appeals of Minnesota.

Aug. 21, 2001.

Review Denied Oct. 24, 2001.

Considered and decided by HALBROOKS, Presiding Judge, WILLIS, Judge, and HANSON, Judge.

## O P I N I O N

HALBROOKS, Judge.

Appellant challenged a determination by the commissioner of health that appellant's failures to (1) recognize a significant change in the patient's condition; (2) take action, other than to move the patient to the lobby, (3) contact the patient's physician, and (4) recognize the patient's right to self-determination constituted neglect under Minn.Stat. § 626.5572, subd. 17 (1996). After a hearing, the district court affirmed. Alleging that he acted in good faith and that he should be allowed to assert a single-mistake or therapeutic-conduct defense, appellant contends that the district court erred. Because the record supports the commissioner's decision, we affirm.

## FACTS

Appellant J.R.B. graduated from nursing school in February 1996. He began working at Hillcrest Care Center ("Hillcrest") as a registered nurse on May 20, 1996. Pursuant to Hillcrest policy, nurses were to contact a resident's physician if there was a significant change in a resident's physical or mental condition.

On June 19, 1996, 89–year–old M.M. was brought to Hillcrest for rehabilitation following hip surgery. She planned to return to her home, where she lived independently, after rehabilitation. At the time she arrived, M.M. was diagnosed with hypertension, mild congestive heart failure, and was taking medication for a seizure disorder and to thin her blood. M.M. signed her own admission forms and answered all questions upon admission herself.

Two days later, appellant was summoned to M.M.'s room after she began complaining of nausea during the evening of June 21, 1996. M.M. told appellant that she was experiencing a pain in her right arm, and he observed that her left arm and leg were making jerking motions. Although appellant took M.M.'s other vital signs, appellant stated that the spastic movements of her left arm prevented appellant from taking M.M.'s blood pressure. Appellant did not review M.M.'s chart, which noted her low blood pressure since her arrival. M.M. asked not to be left alone, but appellant left to find a licensed practical nurse to consult with. When appellant returned with another nurse, M.M. said that she thought she was dying and asked appellant to contact her physician or one of her relatives.

Appellant did not call M.M.'s physician because he did not believe that there had been a significant change in her physical condition. Rather, he believed that M.M.'s symptoms were behavioral as a result of moving into a nursing home. Appellant moved M.M. to the lobby because he concluded that she was afraid of being alone and needed to be around other people. M.M. became increasingly agitated and continued to demand that 911 or the police be contacted. She eventually became exhausted and quiet and was put to bed by the next shift at 12:30 a.m. At some later point, another nurse contacted the on-duty physician, not M.M.'s personal physician, and reported M.M.'s agitation. Not knowing that M.M.'s blood pressure was low, the physician only prescribed anti-anxiety medication. Appellant saw M.M. during his shift on June 22 and decided that she was responding well to anti-anxiety medication.

At 1:00 a.m. on June 23, 1996, M.M. was taken to the emergency room. Four hours later, she died. Her cause of death was "congestive heart failure" occurring six hours before her death. The death certificate also lists myocardial infarction occurring 48–72 hours before M.M.'s death as an underlying cause and a stroke as a significant condition contributing to her death.

Sharon Long, R.N., an investigator with the Minnesota Department of Health (DOH), began an investigation into M.M.'s death. Her investigation included a review of personnel and medical records and staff interviews. In her report, Long stated that three Hillcrest employees, including appellant, "were responsible for the neglect of health care." Long concluded that appellant failed to recognize a significant change in M.M.'s condition, to accurately assess her condition and monitor it, and to seek appropriate medical attention based on the observations he had made.

Based on these findings, the DOH determined that J.R.B. was guilty of maltreatment based on neglect of a vulnerable adult. J.R.B. requested a hearing before an appeals referee. Colleen Cooper, M.D., a medical advisor for the DOH, and Long testified on behalf of the state, and appellant testified on his own behalf. Cooper testified that appellant should have realized that M.M.'s mental and physical condition had changed, based on her hysterical behavior, complaints of nausea, and spastic motions.

The referee affirmed the DOH decision and appellant sought review by the DOH commissioner. The DOH deputy commissioner issued a final order, affirming the agency's decision and findings, and appellant petitioned for district court review. The district court affirmed, holding that there was sufficient evidence in the record to find that M.M.'s condition had significantly changed and, therefore, appellant neglected M.M. by not taking appropriate action. This appeal follows.

## ISSUES

1. Did the agency err by finding that appellant failed to establish an affirmative defense of therapeutic conduct?

2. Did the agency err by finding that appellant committed at least two mistakes and is thus not entitled to the single-mistake defense?

## ANALYSIS

### I.

Notwithstanding the district court's review of this matter, this court independently reviews the agency's decision. *Hazelton v. Commissioner of Dep't of Human Servs.*, 612 N.W.2d 468, 470 (Minn.App.2000). Under the Administrative Procedure Act, Minn.Stat. §§ 14.63–14.69 (2000), we must uphold the decision of an administrative agency unless

> the substantial rights of the petitioner have been prejudiced because, among other defects, the decision is not supported by substantial evidence in view of the entire record as submitted.

*Hazelton*, 612 N.W.2d at 470–71 (quotations omitted). Substantial evidence is defined as:

> 1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;
> 2. More than a scintilla of evidence;
> 3. More than some evidence;
> 4. More than any evidence; and
> 5. Evidence considered in its entirety.

*Cable Communications Bd. v. Nor–West Communications P'ship*, 356 N.W.2d 658, 668 (Minn.1984) (citations omitted).

As an 89–year–old patient, M.M. was protected by the Vulnerable Adult Act. Minn.Stat. § 626.5572, subd. 21(1) (2000). A caregiver neglects a vulnerable adult if he or she fails to or omits to supply a vulnerable adult with care or services, including but not limited to, food, clothing, shelter, health care, or supervision which is:

(1) reasonable and necessary to obtain or maintain the vulnerable adult's physical or mental health or safety, considering the physical and mental capacity or dysfunction of the vulnerable adult; and

(2) which is not the result of an accident or therapeutic conduct.

Minn.Stat. § 626.5572, subd. 17(a) (2000). "Therapeutic conduct" is defined as "the provision of program services, health care, or other personal care services done in good faith in the interests of the vulnerable adult." Minn.Stat. § 626.5572, subd. 20 (2000).

Here, the record contains substantial evidence supporting the agency's decision that appellant failed to provide the care that was reasonable and necessary to maintain M.M.'s condition. Appellant acknowledged that he did not obtain a blood pressure reading. He stated that the jerking of M.M.'s left arm initially prevented him from taking her blood pressure, but there is no evidence that he made any later attempt. Both Long and Cooper testified that the change in M.M.'s condition was significant enough to warrant medical attention. Because appellant failed to provide the care necessary for M.M.'s physical health by checking her blood pressure and alerting her doctor to the change in her condition, he neglected M.M.

Appellant argues that even if he neglected M.M., the agency should have found that he was performing therapeutic conduct. He contends that his actions—attempting to take M.M.'s blood pressure, consulting with another nurse, and moving her into the lobby—were done in good faith and in M.M.'s interest and, therefore,

he did not neglect her.[1] The state counters that appellant's actions were not done in M.M.'s interest and, therefore, cannot be considered therapeutic.

On this record, we hold that the DOH properly determined that appellant's response to M.M. did not constitute therapeutic conduct so as to shield him from the charge of neglect. The DOH has medical and scientific expertise in matters involving the health care of vulnerable adults. *See In re Excess Surplus Status of Blue Cross and Blue Shield of Minnesota,* 624 N.W.2d 264, 278 (Minn.2001) ("administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience" (citation omitted)). Additionally, the legislature has given the DOH a central role in investigating and responding to maltreatment claims. Minn.Stat. § 626.557, subd. 9e (2000). The DOH is one of three agencies entrusted with educating "lead agency investigators in the appropriate techniques for investigation of complaints of maltreatment." *Id.* Given this legislative trust, the DOH may properly consider such evidence as a nursing home's rules and medical standards of care when determining whether a caregiver's conduct constitutes maltreatment.

The DOH does not dispute that appellant was acting in good faith when he moved M.M. from her room into the lobby because he thought she was suffering from anxiety and fear. But moving M.M. without taking any additional steps was not in her interest. If appellant had taken M.M.'s blood pressure and looked at her chart, he would have discovered that her physical condition had changed and that her physician should have been notified. Failing to check a patient's vital signs cannot be considered therapeutic, and appellant is not entitled to this defense. Based on this record and the DOH's interpretation of "therapeutic conduct," we conclude that the DOH did not err.

### II.

Appellant also argues that he should be able to avail himself of the single-mistake exception to the statute. At the time of appellant's hearing, the Vulnerable Adult Act provided a defense to a charge of neglect if

> an individual makes a single mistake in the provision of therapeutic conduct to a vulnerable adult which:
>
> (i) does not result in injury or harm which reasonably requires the care of a physician or mental health professional, whether or not the care was sought;
>
> (ii) is immediately reported internally by the employee or person providing services in the facility; and
>
> (iii) is sufficiently documented for review and evaluation by the facility and any applicable licensing and certification agency.

Minn.Stat. § 626.5572, subd. 17(c)(4) (1996).

---

1. Appellant relies on *C.J.K. v. Minnesota Dep't of Health,* No. C9–00–583, 2000 WL 1617815, at *3 (Minn.App. Oct.31, 2000), in support of his arguments. As an unpublished case, *C.J.K.* has persuasive, but not precedential value. Further, the facts of *C.J.K.* are significantly different from the circumstances in M.M.'s case. In contrast to M.M., C.J.K. was a long time nursing home resident with multiple physical and mental problems well-known to the staff, including chronic constipation, incontinence, dementia, schizophrenia, and an inability to speak. Although the nurse in *C.J.K.* failed to notify a physician of a change in her condition, this court concluded that the nurse engaged in "therapeutic conduct because it consisted of appropriate health care for a documented and objectively determined condition" and was done in good faith. *Id.* at *5.

Appellant's argument fails because he cannot satisfy two of the elements necessary for the single-mistake defense. First, the record supports the agency's determination that appellant committed more than one error: (1) appellant failed to take M.M.'s blood pressure, giving up because of her spastic motions; and (2) appellant failed to contact M.M.'s physician. Appellant contends that this would have been useless because, had he called M.M.'s physician, "he would have had to tell the physician that there was no change in the vital signs." This argument only makes sense if one accepts appellant's assertion that he could not get a blood-pressure measurement. But if appellant had tried more than once to take it, he would have realized that M.M.'s blood pressure was abnormal. Appellant then could have reported to M.M.'s physician the change in blood pressure, M.M.'s complaints of nausea, the spastic jerking of her left arm, her near-hysteria, and the cool, moist quality of her skin.

Appellant readily acknowledges that he cannot satisfy the second element for the single-mistake defense. He states that this element is a "Catch 22" because "[i]t is impossible to report something of which you have no knowledge," and he suggests this is why the single-mistake provision has since been amended.[2] But the current provision also states that errors must be "immediately reported and recorded internally" to qualify for the defense. Minn. Stat. § 626.5572, subd. 17(c)(4)(ii) (2000). While we acknowledge that appellant may be correct in pointing out the difficulties in reporting, the language of the statute plainly states that mistakes must be reported *immediately*, and appellant did not do so.

 Finally, appellant argues that he should be entitled to a defense of mistake because of his professional inexperience. We note that the primary purpose of the act is to protect vulnerable adults. *See Cannon v. Habilitative Servs., Inc.*, 544 N.W.2d 790, 794 (Minn.App.1996); Minn.Stat. § 626.557, subd. 1 (2000) (declaring it is public policy of state to protect vulnerable adults). Because this is a remedial statute designed to protect a specific class of individuals, we will interpret the statute in favor of that class. *See Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221–22 (Minn.1981) (holding that because the unemployment compensation statute is remedial in nature it must, therefore, be liberally construed to effectuate the public policy); *see also Baker v. American Family Mut. Ins.*, 460 N.W.2d 86, 90 (Minn. App.1990) (stating that "[t]his court has a duty to interpret * * * statutes to effect their manifest policies and intents" (citing Minn.Stat. §§ 645.16–17 (1986))). Appellant's reading of the single-mistake de-

---

2. The equivalent provision in the current Vulnerable Adult Act states a vulnerable adult is not neglected for the sole reason that

> an individual makes an error in the provision of therapeutic conduct to a vulnerable adult which:
> (i) does not result in injury or harm which reasonably requires medical or mental health care or, if it reasonably requires care, the care is sought and provided in a timely fashion as dictated by the condition of the vulnerable adult; and the injury or harm that required care does not result in substantial acute, or chronic injury or ill-

ness, or permanent disability above and beyond the vulnerable adult's preexisting condition;
> (ii) is immediately reported and recorded internally by the employee or person providing services in the facility in order to evaluate and identify corrective action;
> (iii) is sufficiently documented for review and evaluation by the facility and any applicable licensing, certification, and ombudsman agency; and
> (iv) is not part of a pattern of errors by the individual.

Minn.Stat. § 626.5572, subd. 17(c)(4) (2000).

fense is not in harmony with the statute's purpose. We, therefore, conclude that appellant is not entitled to this defense.

### DECISION

The agency did not err in finding that appellant neglected M.M. or in its determination that appellant is not entitled to assert the defenses of therapeutic conduct or a single mistake.

**Affirmed.**